United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL LIVINGSTON, et al.,

Plaintiffs,

v.

MITAC DIGITAL CORPORATION,

Defendant.

Case No. 18-cv-05993-JST

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: ECF No. 45

Before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. ECF Nos. 45, 48. For the reasons set forth below, the Court will deny the motion.

I.      **BACKGROUND**

        A.      **The Parties and Claims**

This putative class action arises out of Defendant MiTAC Digital Corporation's marketing and sale of navigator GPS devices to Plaintiffs Michael Livingston and Sharon McGill. ECF No. 21 at 2-7. In its marketing materials, MiTAC Digital represented that Magellan RoadMate Navigator GPS devices were eligible for "free lifetime map updates." *Id.* ¶ 2. However, Defendant provided free updates for only the first three years after purchase, and consumers were required to pay for any additional updates. *Id.* ¶¶ 4, 8, 11, 37. Defendant's marketing materials, owner's manuals, and product packaging allegedly included no indication that "lifetime" meant three years. *Id.* ¶ 2. In June 2018, Defendant allegedly added a link to its website which routed to the following disclaimer: "lifetime refers to the useful lifetime of the device considered to be 3 (three) years from the date of manufacture." *Id.* ¶ 6.

Plaintiffs' operative first amended complaint asserts six claims. Plaintiffs allege that Defendant's concealment and failure to disclose the true nature of the "free lifetime map updates"

United States District Court
Northern District of California

1    policy violates (1) the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*,

2    and (2) California unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.*  ECF No. 21 ¶¶

3    50-78.  Plaintiffs further allege that Defendant's alterations of its "Terms and Conditions" on or

4    around August 2018 and attendant refusal to honor its lifetime map update warranty constitute

5    (3) breach of express warranty under California Commercial Code § 2313 and (4) breach of

6    written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303, *et seq.*  *Id.* ¶¶ 79-99.

7    Finally, Plaintiffs assert (5) trespass to chattels and (6) unjust enrichment.  *Id.* ¶¶ 100-11.

8         **B.**      **Procedural Background**

9         On September 28, 2018, Plaintiffs filed this putative class action in the United States

10   District Court of the Northern District of California.  ECF No. 1.  Defendant filed a motion to

11   dismiss Plaintiffs' complaint on November 26, 2018.  ECF No. 17.  The parties then stipulated to

12   allow Plaintiffs to file an amended complaint.  ECF Nos. 19, 20.  Plaintiffs filed their first

13   amended complaint on December 17, 2018, which Defendants moved to dismiss shortly thereafter.

14   ECF Nos. 21, 23.  Plaintiffs filed their opposition to the motion to dismiss on January 21, 2019,

15   which Defendant followed with its reply brief on January 29, 2019.

16        On April 24, 2019 this Court issued an order requesting further briefing on Plaintiffs'

17   claim for trespass to chattels.  ECF No. 36.  On April 29, 2019, the parties notified the Court of a

18   scheduled mediation and stipulated to an enlargement of time to file further briefing on Plaintiffs'

19   trespass to chattels claim.  ECF No. 39.  The parties attended an all-day mediation before Hon.

20   Jay. C. Gandhi (Ret.) on May 8, 2019 and then notified the Court that they "reached an amicable

21   resolution of this entire matter."  ECF No. 41 at 2.  On July 12, 2019, Plaintiffs' filed this

22   unopposed motion for preliminary approval of class action settlement.  ECF No. 45.

23        **C.**      **Terms of the Settlement Agreement**

24        The proposed settlement agreement ("Settlement") resolves claims between Defendant and

25   the settlement class, defined as follows: "all persons who purchased an Eligible Device in the

26   United States of America at any time within the Class Period."  ECF No. 45-1 ¶ 4.  "Eligible

27   Device" is defined as "a Magellan RoadMate Navigator device with Free Lifetime Map updates

28   purchased within the Class Period."  *Id.* ¶ 11.  "Class Period" is defined as "the period from

United States District Court
Northern District of California

1    September 28, 2014, to June 30, 2019." *Id.* ¶ 6.

2          Under the Settlement, Defendant agrees "to reimburse Class Members for verified out-of-

3    pocket costs incurred to update Eligible Devices, plus simple interest at a rate of seven percent per

4    annum." *Id.* ¶ 25.  In order to receive these cash reimbursements, class members must complete a

5    reimbursement form and submit it to Defendant within 90 days after the Mailing Date. *Id.*

6    "Mailing Date" is defined as "the latest date on which Defendant emails or mails the Class Notice

7    to a particular class member." *Id.* ¶ 21.  In addition, the Settlement provides that all class

8    members will be eligible to receive free map updates going forward. *Id.* ¶ 25.  In order to receive

9    free updates, class members must register their device(s) with Defendant within 90 days after the

10   Mailing Date. *Id.*  Class members will then be able to receive free updates for their registered

11   devices for three years. *Id.*  At the end of this three-year period, class members will "have the

12   opportunity to renew their three-year registration at no charge" and may continue to renew their

13   three-year registrations for as long as they use their Eligible Devices. *Id.*

14         Defendant has also agreed not to oppose motions for attorney's fees and costs up to

15   $320,000 and for class representative enhancement payments up to $2,500. *Id.* ¶¶ 26, 27.

16         In exchange, class members will release the following claims against Defendant:

17              all claims, rights, demands, liabilities, losses, obligations, damages,
                penalties, interests, actions, liens, suits, judgments, indebtedness,
18              costs, fees, expenses, restitution, debts, controversies, causes of
                action and all other legal responsibilities of any form or nature
19              whatsoever which Plaintiffs and Class Members have or may have
                arising out of or relating to any allegations made in the Action or
20              any legal theories that could have been raised based on the
                allegations in the Action.
21
*Id.* ¶ 17.  In agreeing to this release, Plaintiffs acknowledge "that they are aware that they or other
22
attorneys may hereafter discover claims or facts in addition to or different from those that they
23
now know or believe exist" and assert that they "fully, finally and forever settle and release" all
24
claims "known or unknown, suspected or unsuspected." *Id.* ¶ 30.
25
      In order to inform class members of the Settlement, Defendant proposes the following
26
notice plan.  Within seven days of preliminary approval, Defendant will email class members a
27
copy of the class notice. *Id.* ¶ 31.  For class members to whom email is undeliverable and for
28

3

1    whom Defendant can determine a valid postal address after a reasonable effort, Defendant will

2    send a copy of the class notice by first-class U.S. mail.  *Id.*  Defendant will perform the

3    administrative tasks involved in the Settlement "at no cost to class members."  ECF No. 45 at 22.

4       Any class member who wishes to opt out of the Settlement must complete and submit a

5    Request for Exclusion form within 45 days from the latest date on which Defendant emailed or

6    mailed that class member.  ECF No. 45-1. ¶¶ 21, 33.  Moreover, class members who wish to

7    object to the settlement must file and serve a notice of objection within this 45-day period.  *Id.* ¶¶

8    12, 21, 35.  In order to be valid, the notice of objection must include: "(i) the objector's full name,

9    signature, address, and telephone number; (ii) whether the objection applies only to the objector,

10   to a specific subset of the class, or to the entire class; (iii) a written statement of all grounds for the

11   objection accompanied by any legal support for such objection; (iv) copies of any papers, briefs,

12   or other documents upon which the objection is based; and (v) a statement whether the objector

13   intends to appear at the Final Approval Hearing."  *Id.* ¶ 12.  Defendant plans to apply for an award

14   of attorney's fees and costs at the time of final approval of the Settlement.  ECF Nos. 45-1 ¶ 41,

15   45 at 10.

16   **II.    LEGAL STANDARD**

17      **A.    Class Certification**

18      Class certification under Federal Rule of Civil Procedure 23 is a two-step process.  First, a

19   plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity,

20   commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has

21   concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily*

22   *News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564

23   U.S. 338, 351 (2011)).

24      Second, a plaintiff must establish that the action meets one of the bases for certification

25   in Rule 23(b).  Plaintiff relies on Rule 23(b)(3) and must therefore establish that "questions of law

26   or fact common to class members predominate over any questions affecting only individual

27   members, and that a class action is superior to other available methods for fairly and efficiently

28   adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    When determining whether to certify a class for settlement purposes, a court must pay

2    "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

3    591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement

4    class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the

5    proceedings as they unfold." *Id.*

6    **B.      Preliminary Settlement Approval**

7    The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

8    actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires

9    courts to employ a two-step process in evaluating a class action settlement. First, the parties must

10   show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed.

11   R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the

12   settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule

13   23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to

14   determine whether the settlement falls "within the range of possible approval." *In re Tableware*

15   *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual

16   for Complex Litigation, Fourth § 21.632 (FJC 2004) (explaining that courts "must make a

17   preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms

18   and must direct the preparation of notice of the certification, proposed settlement, and date of the

19   final fairness hearing"). "The initial decision to approve or reject a settlement proposal is

20   committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation

21   omitted).

22   Settlements that occur before formal class certification also require a higher standard of

23   fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such

24   settlements, in addition to considering the above factors, the court also must ensure that "the

25   settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*

26   *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotation marks and alterations

27   omitted). Signs of collusion include, but are not limited to: (1) a disproportionate distribution of

28   the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an

United States District Court
Northern District of California

1    arrangement for funds not awarded to revert to defendants rather than to be added to the settlement

2    fund.  *Id.* at 947.

3            If no class has yet been certified, a court must likewise make a preliminary finding that it

4    "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal."  Fed. R.

5    Civ. P. 23(e)(1)(B).  If the court makes these preliminary findings, it "must direct notice in a

6    reasonable manner to all class members who would be bound by the proposal."  *Id.*  Second,

7    courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the

8    settlement is "fair, reasonable, and adequate."

9            Within this framework, preliminary approval of a settlement is appropriate if "the proposed

10   settlement appears to be the product of serious, informed, non-collusive negotiations, has no

11   obvious deficiencies, does not improperly grant preferential treatment to class representatives or

12   segments of the class, and falls within the range of possible approval."  *In re Tableware*, 484 F.

13   Supp. 2d at 1079 (citation omitted).  The proposed settlement need not be ideal, but it must be fair

14   and free of collusion, consistent with counsel's fiduciary obligations to the class.  *Hanlon v.*

15   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise;

16   the question we address is not whether the final product could be prettier, smarter or snazzier, but

17   whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts

18   must balance a number of factors:

19           [T]he strength of the plaintiffs' case; the risk, expense, complexity,
             and likely duration of further litigation; the risk of maintaining class
20           action status throughout the trial; the amount offered in settlement;
             the extent of discovery completed and the stage of the proceedings;
21           the experience and views of counsel; the presence of a governmental
             participant; and the reaction of the class members to the proposed
22           settlement.

23   *Id.* at 1026 (citations omitted).[1]  The proposed settlement must be "taken as a whole, rather than

24   the individual component parts," in the examination for overall fairness.  *Id.*  Courts do not have

25   _____

26   [1] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e),
     which were not intended "to displace any factor [developed under existing Circuit precedent], but
27   rather to focus the court and the lawyers on the core concerns of procedure and substance that
     should guide the decision whether to approve the proposal."  *Hefler v. Wells Fargo & Co.*, No. 16-
28   CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P.
     23(e)(2) advisory committee's note to 2018 amendment).

1    the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in

2    its entirety." *Id.* (citation omitted).

3    **III.    DISCUSSION**

4    While some of the above factors lend support for finding that the Settlement falls within

5    the range of possible approval, there are a number of obvious deficiencies that prevent the Court

6    from granting preliminary approval at this time.[2]

7    **A.    Range of Recovery**

8    This Court "has more than once denied motions for approval where the plaintiffs

9    'provide[d] no information about the maximum amount that the putative class members could

10   have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S.*

11   *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't*

12   *of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).

13   "This is because any fraction has a denominator, and without knowing what it is the Court cannot

14   balance plaintiffs' expected recovery against the proposed settlement amount." *Id.* at 970.

15   Here, Plaintiffs provide minimal information as to the value of the class's claims.

16   Plaintiffs estimate that the class members paid an aggregate of $44,073.75 for map updates during

17   the class period.  ECF No. 45 at 20.  Plaintiffs state that they "would have sought this amount in

18   damages and would also have asked for a judgment compelling Defendant to provide free map

19   updates to all Class Members" if they had proceeded to trial.  *Id.*  Plaintiffs fail to estimate the

20   monetary value of the free map updates it would have sought.[3]  *Id.*

21

22   ――――――――――――――――――

     [2] Based on Plaintiffs' motion, the Court does not foresee obstacles to preliminarily certifying the
23   class for settlement purposes only.  But the Court will defer ruling on preliminary class
     certification until the parties have corrected the deficiencies in the Settlement.

24
     [3] Plaintiffs do state, "If only 10% of the 369,443 Class Members who registered their Eligible
25   Devices obtained only one free update each (that would otherwise be valued at $83.95 – the
     average amount that Defendant actually charged) the value of the settlement could be monetized at
26   approximately $3.1 million."  ECF No. 45 at 21.  This would suggest a potential recovery at trial
     of 10 x $3.1 million, i.e., $31 million.  But Plaintiffs provide no information regarding the total
27   number of updates available during the class period.  If more than one update was published, then
     the potential total recovery at trial could be a multiple of $31 million.  Plaintiffs should address
28   these facts in any renewed motion.

United States District Court
Northern District of California

1    Plaintiffs' submission does not provide the Court with sufficient information to evaluate

2    the reasonableness of the class's recovery.  As a result, the Court cannot assess whether this

3    estimate has any basis in fact.  "Balancing the class's potential recovery against the amount

4    offered in settlement is 'perhaps the most important factor to consider' in preliminary approval,

5    not a hollow exercise in which the Court blindly accepts the parties' unsupported assertions."

6    *Haralson*, 383 F. Supp. 3d at 970 (internal citation omitted) (quoting *Cotter v. Lyft, Inc.*, 176 F.

7    Supp. 3d 930, 935 (N.D. Cal. 2016)).  "Plaintiffs seeking preliminary approval should show their

8    work by explaining the relative value of their claims in significant detail."  *Id.*;  *Eddings v. DS*

9    *Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016).

10    Similarly, the Plaintiffs have failed to supply "enough information to evaluate the strengths

11    and weaknesses of [their] case."  *Haralson*, 383 F. Supp. 3d at 970.  Instead, Plaintiffs provide

12    generic statements of various risks inherent to a class action, namely that the Court might deny

13    certification of a nationwide class, that Defendant will move to dismiss some of its claims, and

14    that Defendant will seek summary judgment.  ECF No. 45 at 20-21.  Courts, including this one,

15    have required more.  *Haralson*, 383 F. Supp. 3d at 970; *see K.H.*, 2018 WL 3585142, at

16    *5 (denying preliminary approval where "[p]laintiffs have not even attempted to provide

17    'hypothetical scenarios,' that could produce various expected recoverable damages to measure

18    against the proposed settlement amount" (quoting *Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-

19    CV-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014));  *Hunt v. VEP Healthcare,*

20    *Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for

21    preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering

22    a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings*,

23    2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions

24    that the defendants might take, but they don't analyze those issues or evaluate the strength or

25    weakness of defendants' positions.  A party moving for preliminary approval should cite case law

26    and apply it to explain why each claim or defense in the case is more or less likely to prove

27    meritorious.").

28    In sum, any future motion for preliminary approval should articulate an estimated

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    maximum value of Plaintiffs' claims and explain the basis for calculating this value.

2          **B.      Opportunity to Object to Attorney's Fees**

3          The parties' proposed timeline contemplates that Plaintiffs' counsel will apply for an

4    award of attorney's fees and costs at the time of final approval of the Settlement.  ECF Nos. 45-1 ¶

5    41, 45 at 10.  Class members, however, must submit their requests for exclusion and notices of

6    objection before final approval.  *See* ECF Nos. 45-1 ¶ 21, 45 at 11.  "The plain text of [Rule 23(h)]

7    requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not

8    merely to the preliminary notice that such a motion will be filed."  *In re Mercury Interactive Corp.*

9    *Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).  On the other hand, "Rule 23(h) does not require

10   that class counsel's fee motion be filed before the deadline for class members to object to, or opt

11   out of, the substantive *settlement*," so long as there is a separate opportunity for class members to

12   object to the fee motion after it is filed.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*

13   *& Prod. Liab. Litig.*, 895 F.3d 597, 615 (9th Cir. 2018).  Accordingly, the parties should propose

14   either (1) a single objection/exclusion deadline for both the substantive settlement and the fee

15   motion, after the fee motion has been filed, or (2) a second objection deadline for the fee motion.

16         **C.      Notice Plan**

17         The Court notes several defects regarding the timing and contents included in the proposed

18   notice plan.  First, the class members have only 45 days to object or opt out from the time the

19   notice is emailed or mailed, which may provide less than 45 days from the time a class member

20   actually receives the notice.  *See* ECF Nos. 45-1 ¶ 21.  This time period is too short and might

21   depress the number of opt-outs submitted.  *See Myles v. AlliedBarton Security Services, LLC*, No.

22   12-cv-05761-JD, 2014 WL 6065602, at *4-5 (N.D. Cal. Nov. 12, 2014) (finding that a 45-day

23   time frame to object or opt out after the notice is mailed is too short); *Tijero v. Aaron Brothers,*

24   *Inc.*, No. C 10-1-89 SBA, 2014 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013) (finding that the short

25   time frame proposed by the parties was "likely to decrease the number of opt-outs and objections

26   submitted").  "The Court concludes that any period shorter than 60 days is too short a time to

27   allow class members to properly respond."  *Thomas v. Magnachip Semiconductor Inc.*, No. 14-

28   CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr. 7, 2016).  A 45-day window "does not

United States District Court
Northern District of California

1     adequately protect the interests of the class, which includes providing class members sufficient

2     time to make a fully informed decision on whether to participate in this action and, if so, whether

3     any objection is appropriate." *Tijero*, 2014 WL 60464, at \*10.  If the parties seek preliminary

4     approval of a new settlement, they should allocate a minimum of 60 days to opt out or object.

5         Second, class members do not need to provide their telephone numbers and addresses,

6     contrary to what is currently indicated in the Exclusion Form that class members will use to opt

7     out of the Settlement.  ECF No. 45-1 at 30.  To request exclusion from the Settlement, the only

8     information a class member must provide is (1) the class member's name, (2) a statement that the

9     class member wishes to be excluded from the settlement class in *Livingston v. MiTAC Digital

10    Corp.*, No. 3:18-cv-05993-JST, and (3) the class member's signature.  Northern District of

11    California, *Procedural Guidance for Class Action Settlements* § 4 ("Northern District Guidance"),

12    https://www.cand.uscourts.gov/ClassActionSettlementGuidance.  The notice "should require only

13    the information needed to opt out of the settlement and no extraneous information." *Id.*

14        Third, contrary to what is currently indicated in the Settlement, class members are not

15    required to accompany their objections with: (1) legal support, (2) copies of papers, briefs, or other

16    documents upon which the objection is based, or (3) a statement of whether the objector intends to

17    appear at the Final Approval Hearing.  ECF No. 45-1 ¶ 12; Fed. R. Civ. P. 23(e)(5); Northern

18    District Guidance § 5.  To object to the Settlement, a class member need only (1) state with

19    specificity the ground for the objection and (2) state whether it applies to the objector, to a specific

20    subset of the class, or to the entire class. *Id.*

21        **D.**    **Settlement Administrator**

22        Given Plaintiffs' contention that Defendant "is in the best position to verify claims for

23    refunds" and that "Defendant has the contact information for any Class Member who paid for an

24    update," ECF No. 45 at 22, it is unclear to the Court why a claims process is required and why

25    Defendant cannot simply refund the money directly to affected Class Members who purchased

26    updates during the Class Period.  If the parties' settlement continues to utilize a claims-made

27    process, Plaintiffs should explain why such a process is appropriate.

28        Plaintiffs should also either require the appointment of an independent claims

administrator or provide legal support for having the Defendant administer its own settlement.

One reason for appointing an independent claims administrator is that such an entity has no

interest in either increasing or decreasing the class's recovery.  Even if Defendant refunds money

directly to class members, an independent administrator can verify the amount of such refunds and

that Defendant has provided such refunds to all affected class members.  If the parties contemplate

the appointment of an administrator, Plaintiffs should also provide the information concerning that

entity required by the Northern District Guidance.  Northern District Guidance § 2.

###### E.      "Clear Sailing" Provision

The Settlement contains a "clear sailing" provision.  Paragraph 26 of the Settlement

provides:

> Class Counsel will request Attorneys' Fees and Costs not in excess
> of Three Hundred Twenty Thousand Dollars ($320,000).  Defendant
> agrees not to oppose or impede any application or motion by Class
> Counsel for Attorneys' Fees and Costs as set forth in this paragraph.

ECF No. 45-1 ¶ 26.  When a settlement contains a clear sailing provision, "the district court has a

heightened duty to peer into the provision and scrutinize closely the relationship between

attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees

simply because they are uncontested." *In re Bluetooth*, 654 F.2d at 948 (quoting *Staton v. Boeing

Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

Plaintiffs contend that the clear sailing provision "does not signify a deficiency with the

Settlement because attorneys' fees and Class Members' recovery are not coming from a common

fund." ECF No. 45 at 23 (citing *Schuchardt v. Law Office of Roy W. Clark*, 2016 WL 232435, *9

(N.D. Cal. Jan. 20, 2016) ("Courts consistently have found that clear sailing provisions do not

signal collusion where the attorneys' fees award does not involve a common fund apportioned

between relief for the class and attorneys' fees" (citing *Roberts v. Electrolux Home Prods., Inc.*,

No. SACV12-1644-CAS(VBKx), 2014 WL 4568632, at *14 (C.D. Cal. Sept. 11, 2014)"; *id.*

("where no common fund exists, no adversarial relationship exists between class counsel and the

class concerning fees") (citing *Calloway v. Cash Am. Net of Cal. LLC*, No. 09-CV-04858 RS,

2011 WL 1467356, at *2 (N.D. Cal. Apr. 12, 2011)).

The Court has read *Schuchardt*, *Roberts*, and *Calloway*, and finds them unpersuasive.

11

1   They contravene Ninth Circuit authority holding that a clear sailing provision "does not signal the

2   possibility of collusion" where class counsel's fee *will* be awarded from a common fund.

3   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009); *see also Acosta v. Evergreen*

4   *Moneysource Mortg. Co.*, No. 2:17-CV-00466-KJM-DB, 2019 WL 6051117, at *13 (E.D. Cal.

5   Nov. 15, 2019) (citing *Rodriguez*); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST,

6   2018 WL 3108991, at *7 (N.D. Cal. June 25, 2018) (same); *In re High-Tech Employee Antitrust*

7   *Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sept. 2, 2015) (same).

8   Indeed, *In re Bluetooth* itself made clear that the court's concern was with "when the parties

9   negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees *separate and*

10  *apart from class funds*, which carries the potential of enabling a defendant to pay class counsel

11  excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the

12  class." *In re Bluetooth*, 654 F.3d 935 at 947 (emphasis added) (internal quotation omitted).

13          That is precisely the situation presented here.  Accordingly, in any revised motion, the

14  parties should either delete the clear sailing provision or explain why the Court should not

15  interpret the provision as a signal of collusion, in light of the authorities cited above.

16          **F.      Other Deficiencies**

17          In addition to the above problems, there are several other omissions or deficiencies that

18  should be addressed in any future motion for preliminary approval.  First, the motion for

19  preliminary approval should state, among other things, "any differences between the settlement

20  class and the class proposed in the operative complaint and an explanation as to why the

21  differences are appropriate in the instant case."  Northern District Guidance § 1(a).  Here, the

22  parties define the Settlement Class as all persons who purchased a "Magellan RoadMate Navigator

23  device with Free Lifetime Map updates" within the United States at any time "from September 28,

24  2014 to June 30, 2019."  ECF No. 45-1 ¶¶ 4, 6, 11.  The First Amended Complaint, however,

25  defines the class as "all persons in the United States who, at any time in the last four years prior to

26  the filing of this complaint, purchased one or more Magellan RoadMate navigation devices with

27  Free Lifetime Map Updates . . . designed, manufactured, marketed, distributed, sold, or warranted

28  by MiTAC Digital Corp."  ECF No. 21 ¶ 1.  The parties should include an explanation as to why

United States District Court
Northern District of California

United States District Court
Northern District of California

1  these differences are appropriate.

2       Second, the parties should provide "an estimate of the number and/or percentage of class

3  members who are expected to submit a claim in light of experience of the selected claims

4  administrator and/or counsel from other recent settlements of similar cases, the identity of

5  examples used for the estimate, and the reason for the selection of those examples."  Northern

6  District Guidance § 1(g).  Plaintiffs' motion for preliminary approval estimates the monetary value

7  of the settlement under scenarios in which 10% of class members obtain one or more free updates.

8  ECF No. 45 at 21.  However, Plaintiffs fail to indicate the class percentage expected to submit

9  reimbursement forms, the class percentage expected to obtain free updates, and the reasoning used

10  to determine these expected percentages.  Without these estimates, the Court is unable to utilize

11  Plaintiffs' asserted monetary value of the settlement in its assessment of whether the settlement "is

12  fair, reasonable, and adequate" under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(2).

13       Third, "[t]he parties should address whether [Class Action Fairness Act of 2005

14  ("CAFA")] notice is required and, if so, when it will be given."  Northern District Guidance § 10;

15  *see also* 28 U.S.C. § 1715(b).  If CAFA notice is required, the Court cannot set a final approval

16  hearing until at least 90 days after such notice is completed.  28 U.S.C. § 1715(d).

## CONCLUSION

18       For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE the motion for

19  preliminary approval.

20       **IT IS SO ORDERED.**

21  Dated: December 4, 2019

22                                                    _____
                                                    JON S. TIGAR
23                                                    United States District Judge

24

25

26

27

28