Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:       (310) 556-4811
Facsimile:       (310) 943-0396

Attorneys for Plaintiffs Michael Livingston
and Sharon McGill

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIVINGSTON and SHARON MCGILL, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MITAC DIGITAL CORPORATION, a California corporation,<br><br>Defendant. | Case No.: 4:18-cv-05993-JST<br><br>Hon. Jon S. Tigar<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      April 15, 2020<br>Time:      2:00 p.m.<br>Place:     Courtroom 6 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 15, 2020, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6 of the above-captioned court, located at1301 Clay Street, Oakland, California 94612, the Honorable Jon S. Tiger presiding, Plaintiffs Michael Livingston and Sharon McGill will, and hereby do, move this Court to:

1.    Preliminarily approve the settlement described in the Amended Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.    Conditionally certify the proposed Settlement Class;

3.    Appoint Michael Livingston and Sharon McGill as the representatives for the Settlement Class;

4.    Appoint Capstone Law APC as Class Counsel;

5.    Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6.    Appoint CPT Group, Inc. as the Settlement Administrator; and

7.    Set a hearing date for final approval of the settlement.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Amended Class Action Settlement; (3) the Declaration of Raul Perez on behalf of the Plaintiffs; (4) the Declaration of Darrel Etter on behalf of Defendant MiTAC Digital Corp.; (5) the Amended Joint Stipulation of Class Action Settlement and Release; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Amended Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other evidence or argument as may be presented to the Court.

Dated:  March 10, 2020                                    Respectfully submitted,

By:   /s/ Trisha K. Monesi
        Raul Perez
        Tarek H. Zohdet
        Cody R. Padgett
        Trisha K. Monesi
        **CAPSTONE LAW APC**

        Attorney for Plaintiffs Michael Livingston
        and Sharon McGill

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   FACTS AND PROCEDURE.........................................................................................2

      A.    Overview of the Litigation..................................................................................2

      B.    The Parties Conducted a Thorough Investigation of the Factual and
            Legal Issues .......................................................................................................3

      C.    The Parties Settled at a Mediation Before a Retired Judge ...............................4

      D.    The Settlement Class and the Principal Terms of the Settlement.......................4

            1.    Composition of the Settlement Class......................................................4

            2.    Settlement Consideration .......................................................................5

            3.    Attorneys' Fees and Incentive Awards...................................................6

            4.    Settlement Administration .....................................................................6

            5.    Release by Plaintiffs and the Settlement Class ......................................8

III.  ARGUMENT .................................................................................................................8

      A.    The Court Should Provisionally Certify a Settlement Class Pursuant to
            Federal Rule of Civil Procedure 23....................................................................8

            1.    The Settlement Class Members are Sufficiently Numerous .............................9

            2.    There are Questions of Law and Fact Common to the Settlement
                  Class .......................................................................................................9

            3.    Plaintiffs' Claims Are Typical of Those of the Settlement Class ...................10

            4.    Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the
                  Interests of the Settlement Class.........................................................10

            5.    Common Issues of Law and Fact Predominant Over Individual
                  Issues ...................................................................................................11

            6.    Class-Wide Resolution is Superior to Individual Actions.................................12

            7.    The Court Should Appoint Capstone Law APC as Class Counsel.................13

      B.    The Court Should Preliminarily Approve the Settlement ..............................13

1              1.    The Settlement Was Negotiated at Arm's-Length By

2                   Experienced Class Counsel.................................................................. 14

3              2.    The Settlement Provides Adequate Relief to the Settlement Class ................ 16

4                   (a)    The Relief Provided by the Settlement is Reasonable and

5                         Adequate in View of the Costs, Risks, and Delay of

6                         Trial and Appeal................................................................ 16

7                   (b)    The Settlement Provides an Effective Method of

8                         Distributing Relief to the Settlement Class ........................................ 19

9                   (c)    The Terms and Timing of the Proposed Attorneys' Fees

10                       Award are Appropriate.......................................................... 20

11                   (d)    The Settlement Administrator Selection Process ............................... 20

12                   (e)    Estimated Claims Rate Based................................................. 21

13               3.    The Settlement Treats Class Members Equitably Relative to

14                   Each Other ...................................................................... 21

15               4.    The Proposed Class Notice Satisfies Rule 23(c)(2)(B) and the

16                   Northern District Guidelines................................................... 22

17               5.    The Attorneys' Fees and Incentive Award Provisions of the

18                   Settlement are Appropriate ..................................................... 24

19  IV.     CONCLUSION............................................................................ 24

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3   **FEDERAL CASES**

4   *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)........................................................................15

5   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).......................................................11, 19

6   *Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-MJS, 2017 WL 4340204 (E.D.

7       Cal. Sept. 29, 2017)........................................................................................................24

8   *Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM DTBX, 2010 WL 9499072

9       (C.D. Cal. July 29, 2010)..............................................................................................21

10  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................14

11  *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 WL

12      1375838 (C.D. Cal. Apr. 4, 2016)..................................................................................21

13  *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................................15

14  *Dearaujo v. Regis Corporation*, No. 2:14-cv-01408-KJM-DB, 2017 WL 3116626 (E.D.

15      Cal. July 21, 2017).........................................................................................................24

16  *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2016 WL 310279 (E.D. Cal. Jan. 26,

17      2016)...............................................................................................................................24

18  *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ...............................................................14

19  *Garnett v. ADT, LLC*, No. CV 2:14-02851 WBS AC, 2016 WL 3538354 (E.D. Cal. June

20      28, 2016) ........................................................................................................................24

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................ *passim*

22  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).................................................10

23  *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784 (N.D. Cal. Nov. 5,

24      2008)...............................................................................................................................15

25  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...............................15

26  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...................9, 11, 12, 19

27  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018)............................18

28

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*, 895 F.3d 597 (9th Cir. 2018)....................................................................................................9, 14, 15

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................................... 19

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115 (E.D. Cal. Dec 22, 2016) ............................................................ 24

*Noroma v. Home Point Financial Corp.*, 2019 WL 1589980 (C.D. Cal.  Apr. 12, 2019) ..................... 8

*O'Conner v. Uber Technologies, Inc.*, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ......................... 13

*Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010)...................................................................................................................... 21

*Tomek v. Apple Inc.*, 636 F. App'x 712 (9th Cir. 2016) ............................................................... 18

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ............................................... 18

*Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015 WL 3622990 (E.D. Cal. June 9, 2015)..................................................................................................... 21


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 9

Fed. R. Civ. P. 23(a)(3) .......................................................................................................... 10

Fed. R. Civ. P. 23(a)(4) .......................................................................................................... 10

Fed. R. Civ. P. 23(b) ................................................................................................................ 8

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 8, 11, 12, 19

Fed. R. Civ. P. 23(e) .............................................................................................................. 13

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(iv) ..................................................................................................... 21

Fed. R. Civ. P. 23(g) .............................................................................................................. 13

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................................... 13

1    I.      **INTRODUCTION**

2           On December 4, 2019, the Court entered an order denying, without prejudice, the motion of

3    Plaintiffs Michael Livingston and Sharon McGill ("Plaintiffs") for preliminary approval of their class

4    action settlement with Defendant MiTAC Digital Corporation ("Defendant").  (Dkt. 55 ["Order"].)  In

5    the Order, the Court identified a number of issues with the settlement and Plaintiffs' motion for

6    preliminary approval.[1]  Plaintiffs and Defendant ("Parties") subsequently amended their settlement to

7    address the Court's concerns.[2]  Plaintiffs respectfully submit that preliminary approval of the amended

8    settlement is now appropriate.

9            First, Plaintiffs herein provide information regarding the range of recovery if this case had

10   proceeded to trial.  This information includes an estimate of the maximum amount that the putative Class

11   Members could receive in damages if they had ultimately prevailed at trial, the value of the specific

12   performance they seek, and a discussion of the strengths and weaknesses of their case.

13          Second, the Amended Settlement provides that the motion for Attorneys' Fees and Costs will be

14   filed no later than 35 days before the deadline for Class Members to file objections.  (Amended

15   Settlement Agreement ¶ 45; Northern District Guidance § 9.)

16          Third, Plaintiffs have addressed all the Court's concerns with the settlement's notice plan.  (Dkt.

17   55 at 9-10.)  The Amended Settlement provides: (1) that the time for Class Members to object or opt out

18   is 60 days (Amended Settlement Agreement ¶ 13, 23, 37-39); (2) Class Members do not have to provide

19   telephone numbers or addresses to be excluded from the class (*see* Amended Settlement Agreement, Ex.

20   C; Northern District Guidance § 4); and (3) Class Members who wish to object to the settlement need

21   only (i) state with specificity the ground for the objection and (ii) state whether it applies to the objector,

22   to a specific subset of the class, or to the entire class.  (Amended Settlement Agreement ¶¶ 13, 39;

23   Northern District Guidance § 5.)

24          Fourth, Plaintiffs have addressed the Court's concern that Defendant was to administer the

25   settlement on its own.  (Dkt. 55 at 10-11.)  The Amended Settlement provides for the appointment of an

---

[1] The Court indicated that it did not foresee any obstacles to preliminarily certifying the class for settlement purposes only.  (*Id.*)
[2] *See* "Amended Joint Stipulation of Class Action Settlement and Release" ("Amended Settlement Agreement" or "Amended Settlement").  (Perez Decl. Ex. 1.)  Unless indicated otherwise, capitalized terms have the same meaning as those defined by the Amended Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

1   independent Settlement Administrator, CPT Group, Inc.  (Amended Settlement Agreement ¶ 25;

2   Northern District Guidance § 2.)

3       Fifth, Plaintiffs have addressed the Court's concern that the settlement contained a "clear sailing"

4   provision.  (*Id.* at 11.)  The "clear sailing" provision has been eliminated from the Amended Settlement.

5   (Amended Settlement Agreement ¶¶ 30, 31.)

6       Finally, Plaintiffs have addressed the remaining deficiencies pointed out by the Court.  (Dkt. 55

7   at 12-13.)  Plaintiff addresses below: (1) why the Class Period ends on June 30, 2019 (Northern District

8   Guidance § 1(a)); (2) the expected claim rate (*Id.* § 1(g)); and (3) that Defendant will provide the notice

9   required by of the Class Action Fairness Act of 2005 ("CAFA") (*id.* § 10). With these changes to the

10  settlement and additional information, Plaintiffs respectfully submit that the Court should grant

11  preliminary approval of the Amended Settlement.

12  **II.      FACTS AND PROCEDURE**

13          **A.      Overview of the Litigation**

14      Since at least 2010, Defendant designed, manufactured, marketed, distributed, and sold

15  Magellan RoadMate Navigator GPS devices with "free lifetime map updates" ("Magellan RoadMate

16  FLM" or "devices").[3]  (*See* First Amended Complaint (Dkt. 21) ("FAC") ¶ 29.)  Under Defendant's

17  original policy, purchase of a device "entitles" owners to "up to four (4) map updates per year, for the life

18  of the GPS receiver or until Magellan no longer receives relevant map data." (*Id.* ¶ 32.)

19      In June 2018, Defendant changed the Terms and Conditions of its lifetime map subscriptions to

20  state, "lifetime refers to the useful lifetime of the device, considered to be 3 (three) years from the date of

21  manufacture."[4]  (FAC ¶ 4, 36.)  After the self-designated 3-year "lifetime of the device" period, Plaintiffs

22  and other owners of Magellan RoadMate FLM devices were required to pay for each map update.  (FAC

23  ¶ 5, 11, 17, 35.)

24      Plaintiffs filed this class action in the United States District Court for the Northern District of

25  California on September 28, 2018.  (Dkt. 1.)  The operative FAC asserts claims for:  (1) violations of

26  _____

27      [3] Defendant also manufactured, marketed, distributed, and sold Magellan RoadMate Navigator
    GPS devices without the "free lifetime map updates" feature. Consumers of such devices would have to
    pay to update the maps. Such consumers are not putative class members in this action.

28      [4] In or around August 2018 the FAQ was changed to state that "lifetime refers to the useful
    lifetime of the device, considered to be three (3) years from the date of first use." (FAC ¶ 5.)

1   California's Consumers Legal Remedies Act ("CLRA"); (2) violations of Unfair Competition Law,

2   California Business & Professions Code sections 17200, *et seq*. ("UCL"); (3) breach of express warranty

3   pursuant to California Commercial Code section 2313; (4) breach of written warranty pursuant to the

4   Magnuson-Moss Warranty Act; (5) trespass to chattels; and (6) unjust enrichment.  Although the

5   operative FAC alleges six causes of action, they are all predicated on these operative facts – that

6   Defendant marketed and sold the devices with "free lifetime map updates," but stopped providing free

7   lifetime map updates after only three years and started charging for them instead.

8              **B.        The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

9             The Amended Settlement is the product of informed negotiations following extensive

10   investigation by Plaintiffs' Counsel.  Before and after filing the Complaint, Plaintiffs' Counsel

11   investigated and researched the claims of Plaintiffs and Class Members relating to the "free lifetime map

12   updates" offered in connection with Defendant's devices.  (Perez Decl. ¶ 4.)

13             After filing the complaint, Plaintiffs' investigation entailed an exchange of information pursuant

14   to formal and informal discovery methods, including document requests and the deposition of

15   Defendant's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs' discovery and

16   investigation focused on identifying the universe of models of the Magellan RoadMate FLM devices and

17   determining which of those devices were and are able to download and use new map updates. (Perez

18   Decl. ¶ 5.)

19             The number of devices sold by Defendant during the Class Period in California and nationwide

20   was of additional significance. Of further significance, was the number of devices shipped to third-party

21   distributors during the Class Period in California and nationwide, the number of Eligible Devices that

22   were registered to Defendant and the ability to identify Class Members through those registration

23   records. Those registration records establish the identity of consumers who may be Class Members who

24   paid for map updates and the costs of those updates on a class wide basis. All details and

25   communications to Class Members regarding Defendant's June 2018 FAQ (the "FAQ") ostensibly

26   limiting the "useful lifetime" of the devices purchased by lifetime subscribers to three (3) years, was also

27   obtained through the discovery mechanisms.

28             The extensive document and information exchanges have allowed Plaintiffs' Counsel to

1   appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the

2   proposed Amended Settlement. (Perez Decl. ¶ 8.)

3          **C.**        **The Parties Settled at a Mediation Before a Retired Judge**

4           The Parties engaged in preliminary settlement negotiations for several months in early 2019 and

5   were discussing tentative terms and the structure of an agreement. Then, on May 8, 2019, the Parties

6   attended a day-long mediation before the Honorable Jay C. Gandhi (Ret.) at JAMS.  With Judge

7   Gandhi's assistance, the Parties were able to negotiate a complete settlement of all claims at issue.

8   (Perez Decl. ¶ 9.)

9           Plaintiffs filed a motion for preliminary approval of the settlement on July 12, 2019.  (Dkt. 45.)

10   The Court found the matter suitable for disposition without oral argument.  (Dkt. 51.)  The Court then

11   issued an Order on December 4, 2019, outlining a number of deficiencies in the settlement and the

12   motion for preliminary approval.  (Dkt. 55.)  In response to the Order, Plaintiffs have discussed the

13   potential range of recovery in this motion, addressed the timing of the motion for attorneys' fees in the

14   Amended Settlement, changed the settlement's notice plan, agreed with Defendant to have the settlement

15   administered by an independent Settlement Administrator (CPT Group, Inc.), eliminated a "clear sailing"

16   provision from the Settlement Agreement, and addressed other deficiencies identified by the Court.

17          **D.**        **The Settlement Class and the Principal Terms of the Settlement**

18          **1.**        **Composition of the Settlement Class**

19           The FAC defines the Class as "[a]ll individuals in the United States who purchased one or more

20   Magellan RoadMate FLM navigation devices from four years prior to the filing of this complaint

21   through the date of certification. (FAC ¶ 43.)  The Amended Settlement defines the Settlement Class as

22   "all persons who purchased an Eligible Device in the United States of America at any time within the

23   Class Period."  (Amended Settlement Agreement ¶ 4.)

24           An "Eligible Device" is defined as "a Magellan RoadMate Navigator device purchased with

25   Free Lifetime Map Updates purchased within the Class Period." (*Id.* ¶ 11.)  The Class Period is defined

26   as September 28, 2014 to June 30, 2019.  (*Id.* ¶ 6.)  The Settlement Class only releases claims accruing

27   through June 30, 2019 (Amended Settlement Agreement ¶ 19).

28           The significance of June 30, 2019 is as follows:  At the beginning of the Class Period, Defendant

represented that Eligible Devices would be eligible for "free lifetime map updates." On June 18, 2018,
however, Magellan posted an FAQ to its website which narrowly defined "lifetime map subscription" to
mean only *three years* from the date of manufacture. Magellan's plan was to disseminate this narrower
definition for "lifetime map subscriptions" to consumers via updates to its website and marketing
materials, and packaging, and to instruct third-party resellers and distributors to similarly update their
websites, marketing materials, and packaging to notify consumers of how Magellan had defined, or re-
defined, the term "lifetime map subscription." Magellan estimated that the process of completely
disseminating this new definition to the public via the above changes and updates would be complete as
of June 30, 2019. The Parties accordingly agreed that the revised terms and conditions contained in the
FAQ—i.e., limiting free map subscriptions to three years from the date of manufacture—would not
apply to RoadMate Navigators with "Free Lifetime Map Updates" purchased *before* June 30, 2019.

Lastly, the Settlement Class includes those individuals who purchased a device in the U.S., as
opposed to all individuals in the U.S. who purchased a device.  The location of the purchase rather than
the location of the customer is key in identifying the maximum number of potential class members, i.e.
those who purchased a device in the United States and were exposed to the alleged advertising as
described in Plaintiffs' operative complaint.

### 2.  Settlement Consideration

Plaintiffs and Defendant have agreed that Class Members will receive three principal kinds of
consideration:  (1) free map updates; (2) reimbursement for previously purchased Map Updates; and (3)
notice of Magellan's terms and conditions (as explained in the FAQ), and that the terms and conditions
do not apply to RoadMate Navigators with Free Lifetime Map Updates purchased before June 30, 2019.
(Amended Settlement Agreement ¶ 29.)

Class Members who paid out-of-pocket for map updates are also eligible for cash
reimbursements. (Amended Settlement Agreement ¶ 29). Based on the documents and testimony
provided to Plaintiffs, up to 525 consumers who may be Class Members purchased map updates and
paid a total of approximately $44,073.50 for those map updates. The average amount paid for these 525
map updates was approximately $83.95. (Perez Decl. ¶ 6.)

1

### 3.   Attorneys' Fees and Incentive Awards

2    After the settlement terms applicable to the Class Members were established before Judge

3 Ghandi, the parties turned to the issue of reasonable compensation to Plaintiffs' Counsel, and the

4 appropriateness of any incentive award to the representative Plaintiffs. Pursuant to those discussions, and

5 with the assistance and recommendation of Judge Ghandi, it was agreed that Plaintiffs would seek no

6 more than $320,000 in attorneys' fees and costs, and no more than $2,500, each, for Plaintiffs' incentive

7 awards. (Amended Settlement Agreement ¶¶ 30, 31.)

8

### 4.   Settlement Administration

9    The settlement provides for the appointment of an independent Settlement Administrator.

10 (Amended Settlement Agreement ¶ 25; Northern District Guidelines § 2.)  The Parties have selected

11 CPT Group, Inc. as the Settlement Administrator.  (*Id.*) The Settlement Administration Costs will be

12 paid solely by Defendant, and are estimated to be $145,000.  (*Id.* ¶ 24.)

13    Within 20 days after preliminary approval of the Amended Settlement, Defendant will provide

14 the Settlement Administrator with a Class List.  (*Id.* ¶ 4.)  The Class List will include, to the extent

15 Defendant possesses such information, each potential Class Member's full name; email address; and, if

16 applicable, the amounts that each potential Class Member may have paid for map updates.  (*Id.*)  As

17 noted above, Defendant has such information for 373,202 device registrations by consumers who may

18 be Class Members.  (Declaration of Darrel Etter ["Etter Decl."] ¶ 6.)  Defendant does not have such

19 information for other consumers who may be Class Members but never registered their devices with

20 Defendant and, thus, never updated the maps on their devices. (*Id.* at ¶ 5).

21    The Settlement Administrator will establish a Settlement Website.  The Settlement Website will

22 provide links to the Class Notice, motions for approval, the motion for attorneys' fees and costs, and any

23 other important documents in the case.  (Amended Settlement Agreement ¶ 26.)  A copy of the Class

24 Notice is attached to the Amended Settlement Agreement as Exhibit A.  (*Id.* ¶ 6.)  Class Members will

25 be able to submit claims for reimbursement or to opt out of the Settlement Class via the Exclusion Form.

26 (*Id.* at ¶¶ 29, 37.)  The Reimbursement Form and instructions for submitting it to the Settlement

27 Administrator will be available on the Settlement Website.  (*Id.* ¶¶ 22, 26, 29, 35, Ex. B.)  The Exclusion

28 Form will also be available.  (*Id.*, Ex. C.)

Within 45 days after preliminary approval of the Amended Settlement, the Settlement Administrator will email the Class Notice to the 373,202 email addresses provided by consumers, who may be Class Members, when they registered their devices with Defendant. (*Id.* ¶ 35.) For Class Members to whom an email is undeliverable and for whom the Settlement Administrator can determine a valid postal address, the Settlement Administrator will send by first-class U.S. mail a summary version of the Class Notice, which will include instructions on how to obtain the full version. (*Id.*) The Settlement Administrator will provide supplemental notice through print and digital advertising to reach other potential Class Members, who never registered their devices with Defendant. Additionally, Defendant will post on its website a link to the Settlement Website. (*Id.*)

Class Members will then have 60 days to submit a Request for Exclusion or file a Notice of Objection. (*Id.* ¶¶ 13, 23, 37.) Class Members will have 90 days to register for free map updates and/or submit Reimbursement Forms. (*Id.* ¶ 29.) Class Members will be given the option to register on the Settlement Website, or via mail. (*Id.*)

This claims process for reimbursement of map update purchases is necessary to identify Class Members who are entitled to reimbursements. Defendant's records contain the names and email addresses that the consumers provided during registration of these devices, but not their mailing addresses. (Etter Decl. ¶ 6). Accordingly, Defendant is not able to simply mail reimbursement checks to Class Members' last known addresses, as the addresses are not known. Therefore, the Reimbursement Form seeks the additional information necessary to distribute funds to Class Members, including their address to which a check can be mailed.[5]

If any Reimbursement Forms or Requests for Exclusion are defective, those Class Members will be given an opportunity to cure the defects. The Settlement Administrator will email (or mail) the Class Members a cure letter (with a copy to Class Counsel) within 15 business days of receiving the defective submission. Any Class Member who is sent a cure letter will then have 15 calendar days to submit a revised Reimbursement Form or Request for Exclusion. (*Id.* ¶ 36.)

---

[5] Specifically, the third-party distributors and retailers did not share with Defendant, and Defendant does not possess in its records, information on how many of those devices were actually sold to consumers, when they were sold, where they were sold, to whom they were sold, or where the purchasers live. (Etter Decl. ¶ 3).

Within thirty 30 days after final approval of the Amended Settlement (or the resolution of any subsequent appeal), Defendant will make a one-time deposit with the Settlement Administrator of the total amount of Class Members' valid claims for reimbursement. The Settlement Administrator will then distribute those funds as soon as practicable to Class Members. (*Id.* ¶¶ 11, 18, 29.)

**5.    Release by Plaintiffs and the Settlement Class**

In exchange for the settlement consideration, Class Members who do not opt out will agree to release all claims arising out of the FAC during the Class Period.  The Amended Settlement Agreement defines "Released Claims" as:

> [A]ll claims, rights, demands, liabilities, losses, obligations, damages, penalties, interests, actions, liens, suits, judgments, indebtedness, costs, fees, expenses, restitution, debts, controversies, causes of action and all other legal responsibilities of any form or nature whatsoever which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action or any legal theories that could have been raised based on the allegations in the Action during the Class Period.

(Amended Settlement Agreement ¶ 19.)

## III.    ARGUMENT

### A.    The Court Should Provisionally Certify a Settlement Class Pursuant to Federal Rule of Civil Procedure 23

Provisional class certification is a prerequisite to preliminary approval of a class action settlement. *Noroma v. Home Point Financial Corp.*, 2019 WL 1589980 (C.D. Cal.  Apr. 12, 2019). Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  Second, a plaintiff must establish that the action meets one of the bases for certification articulated in Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3) and Plaintiffs must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court must apply the criteria for class certification "differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc)

1    (*Hyundai*). For example, in deciding whether to certify a litigation class, a district court must be

2    concerned with manageability at trial. However, such "manageability is not a concern in certifying a

3    settlement class where, by definition, there will be no trial." *Id.* at 556-57.  On the other hand, in deciding

4    whether to certify a settlement class, a district court must give heightened attention to the definition of the

5    class or subclasses. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, Prods. Liab. Litig.*, 895

6    F.3d 597, 606 (9th Cir. 2018) ("In the settlement context, a court "must pay 'undiluted, even heightened

7    attention' to the class certification requirements." (citation omitted)). That said, the Ninth Circuit en banc

8    court in *Hyundai* recognized that the element of predominance is "readily met" in cases, such as the

9    instant case, alleging consumer fraud. *Hyundai*, 926 F.3d at 559.

10                       **1.       The Settlement Class Members are Sufficiently Numerous**

11           Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

12    impracticable." Here, hundreds of thousands of Magellan RoadMate Navigators with Free Lifetime Map

13    updates were sold and registered to Class Members during the Class Period.  Accordingly, the

14    numerosity requirement is satisfied.

15                       **2.       There are Questions of Law and Fact Common to the Settlement Class**

16           A Rule 23 class is certifiable however only if "there are questions of law or fact common to the

17    class." Fed. R. Civ. P. 23(a)(2). This requirement is easily met in the principal case. For the purposes of

18    Rule 23(a)(2), "even a single common question" is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

19    338, 131 S.Ct. 2541, 2556, 180 L.Ed.2d 374 (2011) (quotations and internal alterations omitted). The

20    common contention, however, "must be of such a nature that it is capable of classwide resolution—

21    which means that determination of its truth or falsity will resolve an issue that is central to the validity of

22    each one of the claims in one stroke."  *Id.* at 2551.

23           Here, the central questions in this case include whether Defendant marketed the Eligible Devices

24    of the Magellan RoadMate by representing that Defendant would provide "free lifetime map updates" to

25    consumers; whether that representation was false or misleading; whether the representation was material

26    to consumers; whether Defendant had a duty to disclose to Class Members that they would not receive

27    free lifetime map updates when they purchased the devices; whether Class Members who purchased

28    Magellan RoadMate FLM Eligible Devices are legally entitled to equitable relief requiring Defendant to

1  provide free map updates; and whether Class Members are legally entitled to reimbursement for map

2  updates. All constitute common contentions of law and fact which are globally resolved pursuant to

3  Plaintiffs' theory of recovery.

4              **3.**      **Plaintiffs' Claims Are Typical of Those of the Settlement Class**

5        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the

6  claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other

7  members have the same or similar injury, whether the action is based on conduct which is not unique to

8  the named plaintiffs, and whether other class members have been injured by the same course of

9  conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks

10  omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be

11  substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

12        Here, both Plaintiffs relied on Defendant's representations regarding "free lifetime map updates"

13  when they purchased their Eligible Devices and thought that Defendant would provide free map updates

14  so long as the device was operable. (FAC ¶¶ 10, 16.) Plaintiff Livingston had received free updates in

15  the past, but when he attempted to update his device in June 2018, he was only presented with the option

16  to purchase an update. (FAC ¶ 11.) Similarly, Plaintiff McGill attempted to update the maps on her

17  device, but was unable to do so without incurring additional costs. (FAC ¶ 17.) Thus, both Plaintiffs

18  were injured by the same course of conduct as Class Members – Defendant marketed and sold the

19  devices with "free lifetime map updates," but stopped providing free lifetime map updates and started

20  charging for them after unilaterally deciding that the term 'free lifetime updates' referenced what

21  Defendant ostensibly determined to be the operational expectancy of the devices; i.e., three (3) years.

22              **4.**      **Plaintiffs and Plaintiffs' Counsel Will Adequately Represent the Interests**

23                          **of the Settlement Class**

24        The final Rule 23(a) requirement asks whether "the representative parties will fairly and

25  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1)

26  the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2)

27  plaintiffs are represented by qualified and competent counsel. *Hanlon*, *supra*, 150 F.3d at 1020.

28        The Rule 23(a) adequacy requirement is met here. Plaintiffs do not have any conflicts of interest

with the Class.  Rather, Plaintiffs have common claims with the Class, based on the same underlying facts, and seek for themselves the same relief as other Class Members—free updates for their Magellan RoadMate FLM Eligible Devices.  Further, Plaintiffs Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement.  The attorneys at Capstone Law APC have successfully certified many class actions by way of contested motions in state and federal court, and have negotiated settlements totaling over 200 million dollars on behalf of hundreds of thousands of Class Members. (*See* Perez Decl. ¶¶ 16-21, Ex. 2.)

### 5.  Common Issues of Law and Fact Predominant Over Individual Issues

To certify a Rule 23(b)(3) class, a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'"  *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Rule 23(b)(3) lists four non-exclusive factors "pertinent" to a predominance finding:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and,
>
> (d) the likely difficulties in managing a class action.

However, as recently noted by the Ninth Circuit en banc court, "[t]hese factors must be considered in light of the reason for which certification is sought—litigation or settlement—which 'is relevant to a class certification.'"  *Hyundai*, 926 F.3d at 558. Thus, "in deciding whether to certify a settlement-only class, 'a district court need not inquire whether the case, if tried, would present

1   intractable management problems.'"[6] *Id.* In other words, "whether a proposed class is sufficiently

2   cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *Id.*

3          The Ninth Circuit en banc panel went on to explain that predominance is "readily met" in cases

4   alleging consumer fraud. *Id.* at 559.  That is because all class members are exposed to the same conduct

5   and/or misrepresentations.

6                In many consumer fraud cases, the crux of each consumer's claim is that a
             company's mass marketing efforts, common to all consumers, misrepresented

7             the company's product—here, a vehicle's fuel efficiency. The class was defined
             as "[a]ll current and former owners and lessees of [specified vehicles] who were

8             the owner or lessee, on or before November 2, 2012, of such [v]ehicle that was
             registered [domestically]."2 This cohesive group of individuals suffered the

9             same harm in the same way because of the automakers' alleged conduct.

10  *Id.* The predominance analysis in this case is analogous to that performed by the court in *Hyundai.*

11  There, "class members were exposed to uniform fuel-economy misrepresentations and suffered identical

12  injuries within only a small range of damages." *Id.* Here, class members were exposed to the uniform

13  "free lifetime map updates" misrepresentations.  They suffered identical injuries – they did not get free

14  lifetime map updates and some Class Members paid for updates.  The dominant legal issue is whether

15  Class Members are entitled relief for these identical injuries.  As stated in *Hyundai*, "[w]e have held that

16  these types of common issues, which turn on a common course of conduct by the defendant, can

17  establish predominance in nationwide class actions." *Id.* at 559.  Thus, predominance is established.

18              **6.      Class-Wide Resolution is Superior to Individual Actions**

19          A class action is also a superior method for fairly and efficiently adjudicating common questions

20  presented.  The Class consists of thousands of members who would be unlikely to bring individual

21  actions to obtain free lifetime map updates or reimbursement for the small amounts of money they either

22  paid, or would have to pay, for map updates. Thus, "[f]rom either a judicial or litigant viewpoint, there is

23  no advantage in individual members controlling the prosecution of separate actions.  There would be less

24  litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."

25  *Hanlon*, 150 F.3d at 1023.

26  _____

27      [6] None of the other factors listed in Rule 23(b)(3) negatively affect the preponderance analysis
    either.  Class members have little or no interest in pursuing individual claims, there are no other actions

28  pertaining to the claims asserted here known to Plaintiffs, and there is no reason not to resolve Plaintiffs'
    class claims in this Court.

1

### 7.    The Court Should Appoint Capstone Law APC as Class Counsel

2      Under Federal Rule of Civil Procedure 23(g), "a court that certifies a class must appoint class

3   counsel." In appointing class counsel, the court must consider the following factors: (a) the work counsel

4   has done in identifying or investigating potential claims in the action; (b) counsel's experience in

5   handling class actions, other complex litigation, and the types of claims asserted in the action; (c)

6   counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to

7   representing the class. Fed. R. Civ. P. 23(g)(1)(A).

8      Here, Capstone identified and investigated the claims that numerous consumers who purchased

9   Magellan RoadMate LFM devices did not receive the represented map updates, or had to pay to receive

10  those updates Capstone determined that these consumers were subject to a uniform misrepresentation –

11  that they would receive "free lifetime map updates." Capstone also has extensive experience handling

12  and settling class actions, regularly engages in consumer class actions, and has more-than-adequate

13  resources to pursue this and other class actions. (*See* Perez Decl. ¶¶ 16-21, Ex. 2.) Capstone has and will

14  continue to vigorously and competently represent the Class Members' interests in this action.

15

### B.    The Court Should Preliminarily Approve the Settlement

16      Pursuant to Rule 23, a class action may only be settled with court approval. Fed. R. Civ. P.

17  23(e). Before a court renders approval, it must determine that the settlement is "fundamentally fair,

18  adequate, and reasonable." *Hanlon*, 150 F.3d at 1026 (*citing* Fed. R. Civ. P. 23(e)(2)). Amendments to

19  Rule 23 took effect on December 1, 2018. These amendments provide new guidance on the "fair,

20  adequate, and reasonable" standard at the preliminary approval stage. "The new Rule 23 clarifies that

21  preliminary approval should  be granted where the parties have 'show[n] that the court will likely be able

22  to ... approve the proposal under [the final approval factors in] 'Rule 23(e)(2)' and 'certify the class for

23  purposes of judgment on the proposal.'" *O'Conner v. Uber Technologies, Inc.*, 2019 WL 1437101, *4

24  (N.D. Cal. Mar. 29, 2019.)

25      Fed. R. Civ. P. 23(e)(2) provides that if the proposal would bind class members, the Court may

26  approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after

27  considering whether:

28

(A)   the class representatives and class counsel have adequately represented the class[7];

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3);[8] and,

(D)   the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide this Court in evaluating the fairness of this settlement.  *See Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004); *see also, Hanlon*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement).  As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).  That is the case here.

## 1.   The Settlement Was Negotiated at Arm's-Length By Experienced Class Counsel

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig*. ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016).  "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here, the Parties mediated the claims of Plaintiffs and the Class with the Hon. Jay C. Gandhi. Judge Gandhi helped to manage the Parties' expectations and provided a useful, neutral analysis of the

---

[7] As discussed above, here the adequacy requirement is met.
[8] Here, there are no agreements required to be identified under Rule 23(e)(3).

1   issues and risks to both sides.  (Perez Decl. ¶ 9.)  A retired judge's participation in a mediation weighs

2   considerably against any inference of a collusive settlement.  *See In re Apple Computer, Inc. Derivative*

3   *Litig.*, 2008 WL 4820784, *3 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d

4   Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the

5   proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were

6   adversarial and non-collusive.

7        The Parties were also represented by experienced class action counsel throughout the

8   negotiations resulting in this settlement.  Capstone employs seasoned class action attorneys who

9   regularly litigate wage and hour claims through certification and on the merits, and have considerable

10  experience settling consumer class actions.  (*See* Perez Decl. ¶¶ 16-21, Ex. 2.)  Defendant has been, and

11  at the mediation was, represented by Orrick, Herrington & Sutcliffe LLP, an international law firm with

12  a robust class action defense practice.[9]

13       The Court must nonetheless assure itself that the settlement was not the product of "collusion"

14  by checking for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to

15  infect the negotiations." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). The Ninth Circuit has

16  identified three such signs: (1) "when counsel receive a disproportionate distribution of the settlement, or

17  when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the

18  parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a

19  certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed

20  fees to the defendant (the "*Bluetooth* Factors"). *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

21  947 (9th Cir. 2011). However, "for all these factors, "subtle signs," and red flags… the underlying

22  question remains this: **Is the settlement fair?**" *Volkswagen "Clean Diesel,"* 895 F.3d at 611 (emphasis

23  added).

24       None of the *Bluetooth* Factors are present here. First, Plaintiffs' Counsel do not seek any

25  distribution of fees from a settlement fund.  Defendant will pay money into a "Qualified Settlement

26  Fund" from which the Settlement Administrator will distribute money only to Class Members.

27  (Amended Settlement Agreement ¶ 29.)  Second, there is no "clear sailing" provision.  (*Id.* ¶¶ 30, 31.)

28

---

[9] *See* https://www.orrick.com/en/Practices/Class-Action-Defense.

Third, there is no "reverter" of unclaimed fees to Defendant.  Defendant will pay whatever attorneys' fees are awarded by the Court, up to the $320,000 limit provided by the Amended Settlement Agreement.

### 2. The Settlement Provides Adequate Relief to the Settlement Class

The next factor requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under  Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### (a) The Relief Provided by the Settlement is Reasonable and Adequate in View of the Costs, Risks, and Delay of Trial and Appeal

The Court asked Plaintiffs to provide additional information regarding the value of the class's claims, and also asked Plaintiffs to estimate the monetary value of the free map updates it would have sought:

> Plaintiffs estimate that the class members paid an aggregate of $44,073.75 for map updates during the class period. ECF No. 45 at 20. Plaintiffs state that they "would have sought this amount in damages and would also have asked for a judgment compelling Defendant to provide free map updates to all Class Members" if they had proceeded to trial. Plaintiffs fail to estimate the monetary value of the free map updates it would have sought."

(Dkt. No. 55, 7:15-20.)

To clarify, had Plaintiffs litigated the case to trial, they would have sought both damages and equitable relief in the form of specific performance.[10] With respect to damages, Plaintiffs would have sought a total of $44,073.75, which is the amount Class Members paid for map updates that should have been free. An argument could be made that Class Members should also have recouped the purchase price of their devices, but Plaintiffs determined that this would not be fair given that Class Members were still able to use their devices and to sell them. Plaintiffs would also have sought specific performance; i.e., a judgment compelling Defendant to provide free map updates, as it had originally

---

[10] *See* Complaint, ¶ 87: "Plaintiffs and the Class are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate."

1   advertised it would.

2         Although the latter remedy (specific performance) has a value, the Court should note that

3   Plaintiffs would not specifically have sought that value in *damages*. In other words, even if the value of

4   the free map updates were, as the Court observed, approximately $31 million[11] (Dkt. No. 55, n.3),

5   Plaintiffs would not have sought a judgment against Defendant in the amount of $31,330,307.90; rather,

6   only a judgment for $44,073.75 in damages and specific performance. This is because under Plaintiffs'

7   theory of recovery, Class Members were damaged only when they had to pay for updates—Class

8   Members suffered no damages for updates they did not purchase. It follows that even though Defendant

9   released approximately 4 updates per year during the Class Period for the 373,202 devices that were

10   registered for updates, Class Members paid for only approximately 525 updates during the Class Period:

11   $44,073.75 combined charge for all updates ÷ $83.95 average update price = 525 updates.

12         Because the settlement now requires Defendant to reimburse Class Members for their out-of-

13   pocket costs to update their devices and to provide free updates for the life of those devices, Plaintiffs

14   have fully accomplished their litigation objectives through the Amended Settlement. Thus to the extent

15   the specific performance can be monetized at $31,330,307.90 or higher, so too can the value of the

16   Amended Settlement's benefits to the class.

17         This settlement value is fair and reasonable in light of the risks of continued litigation and the

18   strengths of Defendant's defenses to the merits of the claims. The Court will recall that Defendant moved

19   to dismiss of Plaintiffs' claims (as alleged in the First Amended Complaint) on January 7, 2019, and at

20   the April 24, 2019 case management conference, the Court indicated that it was inclined to dismiss

21   Plaintiffs' federal and state warranty claims with prejudice. Defendant further argued that Plaintiffs'

22   CLRA and UCL claims had to be dismissed because Plaintiffs failed to allege with specificity that it

23   made any fraudulent representation or omission at the time of sale.

24         The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices

25   undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or

26   services to any consumer." Cal. Civ. Code § 1770(a). "[U]nder the CLRA, plaintiffs must sufficiently

27

28       [11] 373,202 devices that were registered to receive updates x $83.95 average charge to update device = $31,330,307.90.

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS ACTION SETTLEMENT

1    allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v.*

2    *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). The UCL prohibits any "unlawful, unfair or

3    fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. UCL claims deriving from CLRA

4    violations also depend upon the defendant's knowledge at the time of sale. *Wilson*, 668 F.3d at 1145-46

5    & n.5.

6        Defendant claimed that Plaintiffs' allegation that it "knew the Magellan RoadMate FLM

7    navigation devices did not possess the characteristics and benefits as represented and were not of the

8    particular standard, quality or grade as represented" was not sufficiently specific to plead Defendant's

9    knowledge at the time Plaintiffs purchased their RoadMate devices. *See Wilson*, 668 F.3d at 1146-47

10   (finding that plaintiffs' "generalized assertion" of defendant's knowledge of an alleged defect was

11   "merely conclusory"); *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (finding that plaintiff

12   "has not alleged specific facts that 'allow[] the court to draw the reasonable inference' that Apple knew it

13   was issuing misleading advertisements at the time Tomek purchased his laptop"). Defendant also argued

14   that Plaintiffs' allegations of consumer complaints were not sufficient to show its "awareness of its

15   unlawful conduct." Complaint ¶ 35*; see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888,

16   909 (N.D. Cal. 2018) ("[A] handful of complaints do not, by themselves, plausibly show that Huawei or

17   Google had knowledge of the defects and concealed the defects from customers.").

18       Defendant further challenged the sufficiency of Plaintiffs' CLRA letter, as it claimed that

19   Plaintiffs had not provided specific notice that the alleged CLRA violations extended to any other

20   particular RoadMate models. Specifically, Defendant claimed that the CLRA notice identified only one

21   RoadMate 5230-LM product, rather than CLRA Notice makes no reference to the twenty other

22   RoadMate products that Plaintiffs purport to include in their class claims. See Complaint ¶ 1, n.1.

23        Finally, Defendant argued that under Ninth Circuit law, consumer protection claims must be

24   governed by the law of the jurisdiction in which each purchase occurred. On this basis, Defendant argued

25   that Plaintiffs could not assert California claims on behalf of putative class members who purchased

26   RoadMate devices outside California.

27       In addition to its defenses to the merits of Plaintiffs' claims, Defendant thus also argued that

28   Plaintiffs' claims were not appropriate for class certification, particularly under *Mazza v. Am. Honda*

Page 18

1    *Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).[12] Specifically, for proposed nationwide litigation classes

2    seeking certification under Rule 23(b)(3) and alleging state law violations, the district court must

3    consider whether variations in state law swamp any common issues and defeat predominance, which is

4    fatal to class certification. *Mazza* considered Honda's challenge to a district court's decision to certify a

5    nationwide class of consumers claiming that Honda had misrepresented material information about

6    Acura RLs. Honda contended that the district court erred in certifying the class under Rule 23(b)(3)

7    because California's consumer protection statutes could not be applied to a nationwide class with

8    members in 44 jurisdictions, and therefore plaintiffs had not demonstrated that the questions of law or

9    fact common to class members predominated over any questions affecting only individual members. The

10   Ninth Circuit agreed, holding that under California's governmental interest test, class members'

11   consumer protection claims had to be governed by the laws of the jurisdictions in which the transactions

12   took place. If the Court had applied *Mazza* to the facts of this case, Plaintiffs would have encountered

13   considerable difficulty certifying their claims under the CLRA and UCL.

14          In light of the above defenses and risks of continued, Plaintiffs determined that the relief

15   provided by the Amended Settlement is fair, adequate, and reasonable.

16                   **(b)       The Settlement Provides an Effective Method of Distributing Relief**

17                              **to the Settlement Class**

18          All aspects of the Amended Settlement will be handled by a reputable Settlement Administrator

19   under the scrutiny of Plaintiffs' Counsel and defense counsel, and ultimately, the Court.  The Amended

20   Settlement provides that Defendant will diligently and in good faith compile from its records, to the

21   extent that Defendant possesses such information, and provide to the Settlement Administrator, each

22   potential Class Member's full name; email address; and, if applicable, the amounts that each potential

23   Class Member may have paid for map updates for their Eligible Devices.  (Amended Settlement

25   ──────────────

     [12] *Mazza* involved a litigation class, where the application of the laws of dozens of jurisdictions
26   presented significant trial manageability issues, militating against a predominance finding. But under
     longstanding authority, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997), settlement classes can be
27   certified without regard to manageability problems—none exist because the case has settled. And per the
     Ninth Circuit's decision in *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en
28   banc), the onus is on the "foreign law proponent" to show that California law materially differs from, and
     conflicts with, the foreign law, and that the foreign state's interests would be more impaired than
     California's under the governmental interest test. *Id.* at 561. Here, there is no "foreign law proponent."

Agreement ¶ 4.)  Then, the Settlement Administrator shall, at Defendant's expense, establish Settlement Website, administer reimbursement claims, opt-outs, and registrations for free map updates.  (*Id.* ¶¶ 24-26, 29, 35-37.) The Settlement Administrator will also provide a declaration attesting to the completion of its administration to the Court.  (*Id.* ¶ 41.)  Finally, the Settlement Administrator will distribute reimbursements to Class Members.  (*Id.* ¶ 29.)

This claims process for reimbursement of map update purchases is necessary to identify Class Members who are entitled to reimbursements. Defendant's records contain information provided by the consumer during registration, including name, email addresses, and device serial number, and information from map update purchase transactions, including the date and price of the transactions. However, because the vast majority of devices were sold by third-party retailers, who did not share their sales records with Defendant, Defendant's records do not otherwise identify the purchasers and their contact information, where and when they bought their devices, and their device models. Therefore, the Reimbursement Form seeks the additional information necessary to distribute funds to Class Members, including their address to which a check can be mailed.

### (c) The Terms and Timing of the Proposed Attorneys' Fees Award are Appropriate

The settlement provides that Plaintiffs' Counsel will not seek an award of fees and costs in excess of $320,000.  (Amended Settlement Agreement ¶ 30.)  Plaintiffs' Counsel will file their motion for Attorneys' Fees and Costs at least 35 days before Class Members' deadline to file objections.  (*Id.* ¶ 45; Northern District Guidance § 9.)  Plaintiffs' Counsel will not receive payment of fees and costs at until after the Effective Date of the Amended Settlement.  (*Id.* ¶ 47.)

### (d) The Settlement Administrator Selection Process

During the settlement administrator selection process, Defendant obtained bids from the following administrators: (1) CPT Group Inc.; (2) Epiq; (3) KCC Class Action Services LLC; and (4) Rust Consulting. All administrators were given the same notice parameters and provided bids as follows:

| Administrator | Bid Amount |
|---|---|
| CPT Group Inc. | $145,000 |
| Epiq | $162,000 |
| KCC Class Action Services LLC | $187,000 |
| Rust Consulting | $420,000 |

1        Based on the above bids, the Parties selected CPT Group, Inc. to administer the settlement. For

2   their part, Plaintiffs' Counsel have worked with CPT Group, Inc. on multiple occasions over the past few

3   years. Recent settlements (wage and hour settlements) include: *Harris v. Mr. C Manager, LLC*, No. CIV

4   DS1721484 (San Bernardino County Superior Court Aug. 21, 2019); *Frando v. LifeCafe Solutions, Inc.*,

5   No. 2:18-cv-03708-ODW-SS (C.D. Cal. July 12, 2019); and *Gallegos v. Atria Management Co.*, No.

6   5:16-cv-00888-JGB-SP (C.D. Cal. March 2, 2019); Critically, Defendant will be responsible for all costs

7   incurred by the settlement administrator.

8                **(e)**     **Estimated Claims Rate Based**

9        Consistent with Northern District Guidance § 1(g), the Court has directed Plaintiffs' Counsel to

10  estimate the expected claims rate.  (Dkt. 55 at p. 13.)  Section 1(g) suggests counsel rely on "other recent

11  settlements of similar cases." Although Plaintiffs' counsel are unaware of any cases that are factually

12  similar to this one, if one were to more generally compare this settlement with other consumer class

13  action settlements that offered reimbursement for out-of-pocket costs, Plaintiffs would expect a claims

14  rate of between 2% and 5%. *See Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015

15  WL 3622990, at *2 (E.D. Cal. June 9, 2015) (providing reimbursement for car parts; 14,095 out of

16  1,688,899 class members submitted claims for reimbursement); *Corson v. Toyota Motor Sales U.S.A.,*

17  *Inc.*, No. CV 12-8499-JGB (VBKx), 2016 WL 1375838, at *2 (C.D. Cal. Apr. 4, 2016) (providing

18  reimbursement for out-of-pocket expenses for re-tuned electronic control units; 1,301 out of 1,257,225

19  class members submitted claims for reimbursement); *Simon v. Toshiba Am.*, No. C 07-06202 MHP,

20  2010 WL 1757956, at *1 (N.D. Cal. Apr. 30, 2010) (reimbursement for costs to upgrade computers; 538

21  out of 25,350 class members submitted claims); *Browne v. Am. Honda Motor Co.*, No. CV 09-06750

22  MMM DTBX, 2010 WL 9499072, at *14 (C.D. Cal. July 29, 2010) (reimbursement for out-of-pocket

23  expenses incurred for brake pads; 39,000 out of 743,559 class members submitted claims for

24  reimbursement).

25               **3.**     **The Settlement Treats Class Members Equitably Relative to Each Other**

26        The last requirement for approval under Rule 23(e)(2) is that the proposed settlement treats class

27  members equitably relative to each other.  (Rule 23(e)(2)(D)).  Here, the Amended Settlement treats all

28  Class Members the same.  All Class Members who register are entitled to free map updates and any

1    Class Members who already paid for updates are eligible to request a refund with interest.  No segment

2    of the Class is given preferential treatment.  Moreover, as discussed below, the incentive awards sought

3    by Plaintiffs are modest and well within the awards presumed reasonable in this district.

**4.      The Proposed Class Notice Satisfies Rule 23(c)(2)(B) and the Northern**

**District Guidelines**

6            The proposed notice to Class Members meets all the requirements of Fed. R. Civ. P. 23(c)(2)(B),

7    which requires "the best notice that is practical under the circumstances, including individual notice to all

8    members who can be identified through reasonable effort." (*Id.*)  Here, Defendant has the names and

9    email addresses of 373,202 consumers, which it will provide to the Settlement Administrator.  (Etter

10   Decl. ¶ 6.)  The Settlement Administrator will email all of these individuals a copy of the Class Notice

11   within 45 days after Preliminary Approval.  (Amended Settlement Agreement ¶ 35.)  For Class

12   Members to whom an email is undeliverable and for whom the Settlement Administrator can determine

13   a valid postal address after a reasonable effort, the Settlement Administrator will send by first-class U.S.

14   mail a summary version of the Class Notice, which will include instructions on how to obtain the full

15   version.  (*Id.*)  The Class Notice will also be available on the Settlement Website.  (Amended Settlement

16   Agreement ¶ 26.) The Settlement Administrator will provide supplemental notice through print and

17   digital advertising to reach other potential Class Members, who never registered their devices with

18   Defendant. Additionally, Defendant will post on its website a link to the Settlement Website.

19           The form of the Class Notice provides all of the information required by Rule 23(c)(2)(B)(i)-

20   (vii).  (*See* Amended Settlement Agreement, Ex. A.)  It describes: (a) the nature of the action (*see*

21   "Summary of Litigation"); (b) the definition of the class certified (*see* Class Notice p. 1); (c) the class

22   claims, issues, or defenses (*see* "Summary of Litigation"); (d) that a class member may enter an

23   appearance through an attorney if the member so desires (*see* Class Notice p. 2); (e) that the Court will

24   exclude from the class any member who requests exclusion (*id.*); (f) the time and manner for requesting

25   exclusion (*id.*); and (g) the binding effect of a class judgment on members under Rule 23(c)(3). (*Id.*)  In

26   addition, the Class Notice contains information about the Attorneys' Fees and Costs to be sought by

27   Plaintiff, a statement that the Court has preliminarily approved the settlement, and a statement that Class

28   Members will release the settled claims unless they opt out (*id.*, pp. 1-2.).

The Class Notice also complies with Northern District Guidance § 3.  In final form it will contain: (a) contact information for Class Counsel so Class Members can ask questions about the settlement; (b) the URL for the Settlement Website which will have links to the Class Notice, motions for approval and for attorneys' fees, and any other important documents in the case, and will allow Class Members to either submit claims or opt out of the Settlement Class; (c) instructions as to how to access the case docket via PACER or by visiting the office of the Clerk of the Court; and, (d) the date of the Final Approval hearing, that the date may change without further notice to the class, and advises Class Members to check the Settlement Website for updates.  The Class Notice also informs Class Members that the Reimbursement and the Exclusion Forms are available on the Settlement Website, the deadline for registering their Eligible Devices (90 days).  (Amended Settlement Agreement ¶ 29.)  The deadline for Class Members to request exclusion or object to the Amended Settlement is sixty (60) days.  (*Id.* ¶ 23.)

To request exclusion from the Amended Settlement, Class Members need only provide (1) the Class Member's name, (2) a statement that the Class Member wishes to be excluded from the settlement in the matter of *Michael Livingston v. MiTAC Digital Corporation*, No. 3:18-cv-05993-JST (United States District Court, Northern District of California), and (3) the Class Member's signature.  They do not have to provide telephone numbers or addresses.  (*See* Amended Settlement Agreement, Ex. C Exclusion Form; Northern District Guidance § 4.)

To object to the Settlement, Class Members need only (1) state with specificity the ground for the objection and (2) state whether it applies to the objector, to a specific subset of the class, or to the entire class.  (Amended Settlement Agreement ¶ 13; Northern District Guidance § 5.)   Class Members will also have an opportunity to object Class Counsel's request for Attorneys' Fees and Costs.  The motion for Attorneys' Fees and Costs will be filed no later than 35 days before the deadline for Class Members to file objections.  (Amended Settlement Agreement ¶ 45; Northern District Guidance § 9.)

This settlement of the class action is subject to the CAFA notice requirements.  Defendant will provide notice under CAFA within 10 days of the filing of this motion.  The Amended Settlement does not involve coupons, and so is not subject to the requirements of 21 U.S.C. § 1712.  (*See* Northern District Guidance § 10.)

1

        **5.**        **The Attorneys' Fees and Incentive Award Provisions of the Settlement are**

2

        **Appropriate**

3

       As discussed, Plaintiffs' Counsel will seek an award of attorney's fees and costs not to exceed

4

$320,000 and Plaintiffs will seek incentive awards not to exceed $2,500 each at the time of final

5

approval of the Amended Settlement.  These sums are reasonable.

6

       To date, Plaintiffs' Counsel have expended approximately 780 hours on this litigation, which are

7

reasonably valued at approximately $445,000.  (Perez Decl. ¶ 12.)  Plaintiffs' Counsel have also incurred

8

over $15,000 in litigation costs. Thus, the award that Plaintiffs' Counsel agreed to seek does not include

9

any multiplier and is in fact *less* than Capstone's loadstar.  Moreover, Plaintiffs' Counsel's attorneys' fee

10

award will not come at the expense of Class Members since it will be paid directly by Defendant, not

11

from a common fund.  *See Hyundai*, 926 F.3d at 570 (finding that the lodestar method was appropriate

12

where defendant will pay attorneys' fees separately from the amount allocated to the class).

13

       Plaintiffs' requests for incentive awards of $2,500, each, are also reasonable.  First, the amount

14

of the requested awards is presumptively reasonable. *See Dearaujo v. Regis Corporation*, No. 2:14-cv-

15

01408-KJM-DB, 2017 WL 3116626 (E.D. Cal. July 21, 2017) (approving a "presumptively reasonable"

16

incentive award of $5,000); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-

17

01474-DAD-BAM, 2016 WL 7426115 *7 (E.D. Cal. Dec 22, 2016) ("as noted by plaintiff in the instant

18

motion, district courts in this circuit have recognized a $5,000 award to be "presumptively reasonable");

19

*Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-MJS, 2017 WL 4340204 (E.D. Cal. Sept. 29,

20

2017) ("[i]n the Ninth Circuit, $5,000 is considered presumptively reasonable for an incentive award");

21

*Garnett v. ADT, LLC*, No. CV 2:14-02851 WBS AC, 2016 WL 3538354 (E.D. Cal. June 28, 2016) ("[in

22

this circuit], an incentive award of $5,000 is presumptively reasonable"); *Estrada v. iYogi, Inc.*, No. 2:13-

23

01989 WBS CKD, 2016 WL 310279 (E.D. Cal. Jan. 26, 2016) ("an incentive award of $5,000 is

24

presumptively reasonable").  Second, these modest sums are appropriate in recognition of the efforts

25

Plaintiffs have expended in litigating their claims, conferring with counsel in connection with preparing

26

and filing this action, and participating in the settlement process.

27

**IV.**    **CONCLUSION**

28

       The Parties have negotiated a fair and reasonable settlement of claims.  Plaintiffs respectfully

submit the Court should conditionally certify the Class and preliminarily approve the Amended Settlement.

Dated:  March 10, 2020                                  Respectfully submitted,

                                          By:   /s/ Trisha K. Monesi
                                                Raul Perez
                                                Tarek H. Zohdy
                                                Cody R. Padgett
                                                Trisha K. Monesi
                                                CAPSTONE LAW APC

                                                Attorney for Plaintiffs Michael Livingston
                                                and Sharon McGill