UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIVINGSTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MITAC DIGITAL CORPORATION,<br><br>Defendant. | Case No. 18-cv-05993-JST<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: ECF No. 62 |

Before the Court is Plaintiffs' unopposed renewed motion for preliminary approval of class action settlement. ECF No. 62. The Court will grant the motion.

## I. BACKGROUND

### A. The Parties and Claims

This putative class action arises out of Defendant MiTAC Digital Corporation's marketing and sale of navigator GPS devices. ECF No. 21 at 2-7. In its marketing materials, MiTAC Digital represented that Magellan RoadMate Navigator GPS devices were eligible for "free lifetime map updates." *Id.* ¶ 2. However, Defendant provided free updates for only the first three years after purchase, and consumers were required to pay for any additional updates. *Id.* ¶¶ 4, 8, 11, 37. Defendant's marketing materials, owner's manuals, and product packaging allegedly included no indication that "lifetime" meant three years. *Id.* ¶ 2. In June 2018, Defendant allegedly added a link to its website which routed to the following disclaimer: "lifetime refers to the useful lifetime of the device considered to be 3 (three) years from the date of manufacture." *Id.* ¶ 6.

Plaintiffs' operative first amended complaint ("FAC") asserts six claims. *Id.* ¶¶ 50-111. Plaintiffs allege that Defendant's concealment and failure to disclose the true nature of the "free lifetime map updates" policy violates (1) the California Consumer Legal Remedies Act, Cal. Civ.

Code § 1750, *et seq.*, and (2) California unfair competition law, Cal. Bus. & Prof. Code § 17200, *et seq.* ECF No. 21 ¶¶ 50-78. Plaintiffs further allege that Defendant's alterations of its "Terms and Conditions" on or around August 2018 and attendant refusal to honor its lifetime map update warranty constitute (3) breach of express warranty under California Commercial Code § 2313 and (4) breach of written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303, *et seq. Id.* ¶¶ 79-99. Finally, Plaintiffs assert (5) trespass to chattels and (6) unjust enrichment. *Id.* ¶¶ 100-11.

### B. Procedural Background

On September 28, 2018, Plaintiffs filed this putative class action in the United States District Court of the Northern District of California. ECF No. 1. Defendant filed a motion to dismiss Plaintiffs' complaint on November 26, 2018. ECF No. 17. The parties then stipulated to allow Plaintiffs to file an amended complaint. ECF Nos. 19, 20. Plaintiffs filed their first amended complaint on December 17, 2018, which Defendants moved to dismiss shortly thereafter. ECF Nos. 21, 23. Plaintiffs filed their opposition to the motion to dismiss on January 21, 2019, which Defendant followed with its reply brief on January 29, 2019. ECF Nos. 25, 26.

On April 24, 2019, this Court issued an order requesting further briefing on Plaintiffs' claim for trespass to chattels. ECF No. 36. On April 29, 2019, the parties notified the Court of a scheduled mediation and stipulated to an enlargement of time to file further briefing on Plaintiffs' trespass to chattels claim. ECF No. 39. The parties attended an all-day mediation before Hon. Jay. C. Gandhi (Ret.) on May 8, 2019 and then notified the Court that they "reached an amicable resolution of this entire matter." ECF No. 41 at 2. On July 12, 2019, Plaintiffs filed an unopposed motion for preliminary approval of class action settlement. ECF No. 45. The Court denied the motion without prejudice. ECF No. 55. On March 10, 2020, Plaintiffs filed an unopposed renewed motion for preliminary settlement approval. ECF No. 62.

### C. Terms of the Settlement

The proposed settlement agreement ("Settlement") resolves claims between Defendant and the settlement class, defined as follows: "all persons who purchased an Eligible Device in the United States of America at any time within the Class Period." ECF No. 62-1 ¶ 5. "Eligible

Device" is defined as "a Magellan RoadMate Navigator device with Free Lifetime Map updates purchased within the Class Period." *Id.* ¶ 12. "Class Period" is defined as "the period from September 28, 2014, to June 30, 2019." *Id.* ¶ 7.

Under the Settlement, Defendant agrees to "reimburse each Class Member for verified out-of-pocket costs that they incurred to update their Eligible Devices, plus simple interest at a rate of seven percent per annum." *Id.* ¶ 29. In order to receive these cash reimbursements, class members must complete a reimbursement form and submit it to the Settlement Administrator within 90 days after the Notice Date. *Id.* "Notice Date" is defined as "the latest date on which the Settlement Administrator emails or mails the Class Notice." *Id.* ¶ 23. In addition, the Settlement provides that all class members will be eligible to receive free map updates going forward. *Id.* ¶ 29. In order to receive free updates, class members must register their device(s) with Defendant within 90 days after the Notice Date. *Id.* Class members will then be able to receive free updates for their registered devices for three years. *Id.* At the end of this three-year period, class members will "have the opportunity to renew their three-year registration at no charge" and may continue to renew their three-year registrations for as long as they use their Eligible Devices. *Id.*

In exchange, class members will release the following claims against Defendant:

> all claims, rights, demands, liabilities, losses, obligations, damages, penalties, interests, actions, liens, suits, judgments, indebtedness, costs, fees, expenses, restitution, debts, controversies, causes of action and all other legal responsibilities of any form or nature whatsoever which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action or any legal theories that could have been raised based on the allegations in the Action during the Class Period.

*Id.* ¶ 19. In agreeing to this release, Plaintiffs acknowledge "that they are aware that they or other attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist" and assert that they "fully, finally and forever settle and release" all claims "known or unknown, suspected or unsuspected." *Id.* ¶ 30.

Plaintiffs propose the following notice plan to inform class members of the Settlement. Within 20 days after preliminary approval, Defendant will provide the Class List to the Settlement Administrator, CPT Group. ECF No. 62-1 ¶¶ 4, 25. Within 45 days after preliminary approval,

"the Settlement Administrator will email the Class Notice to the 373,202 email addresses provided by consumers, who may be Class Members, when they registered their devices with Defendant." ECF No. 62 at 13; ECF No. 62-1 ¶ 35.  The Class Notice will state: "(i) the nature of the Action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; (vii) the binding effect of a class judgment on members under Federal Rule of Civil Procedure 23(c)(3); (viii) a summary of the Settlement's principal terms and the relief provided; (ix) the time and manner for submitting claims for reimbursement and Notices of Objection; and (x) the claims to be released."  ECF No. 62-1 ¶ 35; *id.* at 26-28.

"For Class Members to whom an email is undeliverable and for whom the Settlement Administrator can determine a valid postal address after a reasonable effort, the Settlement Administrator will send by first-class U.S. mail a summary version of the Class Notice, which will include instructions on how to obtain the full version." *Id.*  The Settlement Administrator will also "provide supplemental notice through print and digital advertising to reach other potential Class Members, who never registered their devices with Defendant." *Id.*  Moreover, the Settlement Administrator will establish a Settlement Website which will provide links to the Class Notice, motions for approval, motion for attorney's fees and costs, and other case documents.  *Id.* ¶ 26.

Class members will have 60 days from the Notice Date to opt out of the Settlement or object to its terms.  *Id.* ¶¶ 13, 23, 37, 39.  If any Reimbursement Forms or Requests for Exclusion are defective, those Class Members will be given an opportunity to cure the defects.  *Id.* ¶ 36.  The Settlement Administrator will email or mail the Class Member a cure letter within 15 days of receiving the defective submission, and the Class Member will then have 15 days to submit a revised Reimbursement Form or Request for Exclusion.  *Id.*  Class members who fail to submit a valid Request for Exclusion by this date will be bound by the terms of the Settlement.  *Id.* ¶ 38.

## II.   CLASS CERTIFICATION

### A.   Legal Standard

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate

4

that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification under Rule 23(b). Plaintiffs invoke Rule 23(b)(3). Therefore, Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* At the same time, trial "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc).

**B.     Discussion**

For the reasons set forth below, the Court grants Plaintiffs' request to conditionally certify the settlement class.

**1.     Rule 23(a)(1): Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Plaintiffs need not state an exact number to meet the threshold requirements of Rule 23. Rather, the rule 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (quoting *Gen. Tel. Co. of the Nw. Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330, (1980)). "A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone." *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (internal quotation marks and citation omitted).

Here, the proposed settlement class consists of all persons who purchased a Magellan RoadMate Navigator device with Free Lifetime Map updates in the United States during the Class Period. ECF No. 62-1 ¶¶ 5, 7, 12. "[H]undreds of thousands of Magellan RoadMate Navigators with Free Lifetime Map updates were sold and registered to Class Members during the Class Period." ECF No. 62 ¶ 15. The Court concludes that Plaintiffs have satisfied their burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable.

### 2.  Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (quotation marks and internal alterations omitted).

Here, all proposed class members suffered the same alleged violations of the California Consumer Legal Remedies Act and California unfair competition law. ECF No. 21 ¶¶ 50-78. The class members also assert the same breach of warranty, trespass to chattels, and unjust enrichment allegations. *Id.* ¶¶ 79-111. Proving these allegations requires resolving common questions of law and fact, such as: (1) whether Defendant failed to disclose material facts concerning its Magellan RoadMate FLM navigation devices, (2) whether Defendant's conduct was unlawful, unfair and/or deceptive, and (3) whether Defendant knew or reasonably should have known of its deceptive representations and omissions relating to the Magellan RoadMate FLM navigation devices. *Id.* ¶ 47. Accordingly, the proposed class satisfies the commonality requirement.

### 3.  Rule 23(a)(3): Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The

6

test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The claims of both the named plaintiffs' and other class members arise from the same alleged MiTAC misrepresentations. ECF No. 21 ¶ 46. Like other class members, the named plaintiffs allege that they "incurred the over-valued costs of purchasing a Magellan RoadMate FLM for a premium price in reliance on MiTAC's representations" that the device included free lifetime map updates. *Id.* ¶ 26; ECF No. 62 at 16. These allegations involve the "same course of conduct," which is "not unique to the named plaintiffs." *See Hanon*, 976 F.2d at 508. Therefore, the typicality requirement is satisfied.

#### 4. Rule 23(a)(4): Adequacy

"[T]he adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

No party has suggested, and the Court has not found, any evidence in the record suggesting that any of the named plaintiffs has a conflict of interest with the other class members. The named plaintiffs share common claims and seek the same relief as the other class members. ECF No. 62 at 16-17; *see* ECF No. 21 ¶¶ 47, 48. Moreover, class counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the class members. ECF No. 62 at 17; ECF No. 62-1 ¶¶ 16-21. Counsel have thoroughly investigated the factual and legal issues in this action and engaged in significant discovery. ECF No. 62-1 ¶¶ 4-8. The Court concludes that the named plaintiffs and class counsel provide adequate representation for the proposed class.

#### 5. Rule 23(b)(3): Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently

7

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted) *overruled on other grounds by Wal-Mart Stores, Inc.*, 564 U.S. 338.

        The dominant legal issue in this action is whether class members are entitled to relief for their exposure to Defendant's alleged "free lifetime map updates" misrepresentations.  ECF No. 62 at 18; *see* ECF No. 21 ¶ 49.  Plaintiffs suffered identical injuries – they "incurred the over-valued costs of purchasing a Magellan RoadMate FLM for a premium price in reliance on MiTAC's representations" that the device included free lifetime map updates.  ECF No. 21 ¶ 26; ECF No. 62 at 16, 18.  The Court finds that the questions surrounding MiTAC's uniform misrepresentations predominate over any question that could affect only individual class members. *See In re Hyundai*, 926 F.3d at 559 (9th Cir. 2019) (finding predominance where "class members were exposed to uniform fuel-economy misrepresentations and suffered identical injuries within only a small range of damages").  "A class action is also a superior method for fairly and efficiently adjudicating those questions.  Resolving the proposed class members' disputes in a single class action will be far more efficient than requiring them each to proceed individually." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 6439167, at *3 (N.D Cal. Dec. 7, 2018). Therefore, the Court concludes that the proposed class satisfies the requirements of Rule 23(b)(3).

### III.    PRELIMINARY SETTLEMENT APPROVAL

#### A.    Legal Standard

        The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Rule 23 requires courts to employ a two-step process in evaluating a class action settlement.  First, the parties must show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R.

8

Civ. P. 23(e)(1)(B). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." *Id.*

The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted).[1]  The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness.  *Id.*  Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety."  *Id.* (citation omitted).

### B. Discussion

Having negotiated a new agreement that they believe addresses the Court's concerns, the parties again seek preliminary approval of the Settlement.  ECF No. 62.  In its order on Plaintiffs' first motion for preliminary approval, the Court noted that some factors lent support for a finding that the Settlement falls within the range of possible approval.  ECF No. 55 at 7.  However, the Court denied the motion for the following reasons: (1) Plaintiffs provided insufficient information regarding the range of recovery in this case, ECF No. 55 at 7-9; (2) the proposed timeline failed to provide an opportunity for class members to object to attorney's fees, *id.* at 9; (3) the proposed notice plan contained several defects, *id.* at 9-10; (4) the settlement failed to appoint an independent claims administrator, *id.* at 10-11; and (5) the settlement contained a "clear sailing" provision, *id.* at 11-12.  The Court concludes that the parties have now corrected these deficiencies.

#### 1. Range of Recovery

The original settlement agreement "provide[d] minimal information as to the value of the class's claims" and "failed to supply 'enough information to evaluate the strengths and weaknesses of [Plaintiffs'] case.'"  ECF No. 55-56 (quoting *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019)).  Thus, Plaintiffs' "submission [did] not provide the Court with sufficient information to evaluate the reasonableness of the class's recovery."  ECF No. 55 at 8.

---

[1] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Plaintiffs have cured these deficiencies in their renewed motion by providing a detailed "estimate of the maximum amount that the putative Class Members could receive in damages if they had ultimately prevailed at trial, the value of the specific performance they seek, and a discussion of the strengths and weaknesses of their case." ECF No. 62 at 7, 22-25. Class Members purchased approximately 525 updates during the Class Period at an average update price of $83.95, for a total of $44,073.75. ECF No. 62 at 23. Plaintiffs would have sought this amount at trial; class members who suffered out-of-pocket damages by paying for updates that should have been free will have those amounts refunded in full. Plaintiffs would also have sought specific performance at trial – relief which class members will now receive, given that MiTAC will now provide updates free of charge to any class member who requests them. *Id.* While the Plaintiffs do not place a specific dollar value on this package of benefits, the Court nonetheless concludes that the revised agreement falls within the range of possible approval, given that class members who opt in will essentially be made whole.

### 2.  **Opportunity to Object to Attorney's Fees**

The original settlement agreement failed to provide class members an opportunity to object to "counsel's fee request on a date *after* the motion and documents supporting it have been filed." ECF No. 55 at 9; *see In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) ("The plain text of [Rule 23(h)] requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed."). The amended settlement cures this deficiency by providing that "[t]he motion for attorneys' fees and costs will be filed no later than thirty-five (35) calendar days before" the deadline for class members to file objections. ECF No. 62-1 ¶¶ 23, 45.

### 3.  **Notice Plan**

The original settlement agreement contained several defects regarding the timing and contents included in the proposed notice plan. First, "the class members ha[d] only 45 days to object or opt out from the time the notice is emailed or mailed, which [would] provide less than 45 days from the time a class member actually receives the notice." ECF No. 55 at 9; *see Thomas v. Magnachip Semiconductor Inc.*, No. 14- CV-01160-JST, 2016 WL 1394278, at *8 (N.D. Cal. Apr.

11

7, 2016) ("[A]ny period shorter than 60 days is too short a time to allow class members to properly respond."); *Tijero v. Aaron Brothers, Inc.*, No. C 10-1-89 SBA, 2014 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013) (finding that a 45-day window "does not adequately protect the interests of the class, which includes providing class members sufficient time to make a fully informed decision on whether to participate in this action and, if so, whether any objection is appropriate."). Second, the notice required class members to provide "extraneous information" – telephone numbers and addresses – to opt out of the settlement. ECF No. 55 at 10; *see* Northern District of California, Procedural Guidance for Class Action Settlements § 4 ("Northern District Guidance"), https://www.cand.uscourts.gov/ClassActionSettlementGuidance. Third, the settlement required class members to accompany their objections with legal support, copies various documents upon which the objection is based, and a statement of whether the objector intends to appear at the Final Approval Hearing. ECF No. 55 at 10; *see* Northern District Guidance § 5.

The amended Settlement and notice plan cure each aforementioned deficiency by providing that: (1) the time for class members to object or opt out is 60 days, ECF No. 62-1 ¶¶ 13, 23, 37-39; (2) class members do not have to provide telephone numbers and addresses to be excluded from the class, *id.* at 32; and (3) class members who wish to object need only "state with specificity the ground for the objection" and "state whether it applies to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class," *id.* ¶¶ 13, 39.

### 4. Settlement Administrator

Rather than appointing an independent claims administrator, the original settlement provided that the Defendant would administer its own settlement agreement. ECF No. 55 at 10-11. This arrangement raised concerns due to Defendant's potential "interest in either increasing or decreasing the class's recovery." *Id.* The amended settlement allays the Courts concerns by providing for the appointment of an independent Settlement Administrator. ECF No. 62-1 ¶ 25.

### 5. "Clear Sailing" Provision

The original settlement contained a "clear sailing" provision in which "Defendant agree[d] not to oppose or impede any application or motion by Class Counsel for Attorneys' Fees and Costs." ECF No. 55 at 11; ECF No. 45-1 ¶ 26. This provision raised concerns of "collusion

among the negotiating parties" in reaching the settlement agreement. *In re Bluetooth*, 654 F.3d 935 at 947 (noting that a "'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." (internal quotation omitted)). The amended settlement addresses the Court's concerns by eliminating the "clear sailing" provision. ECF No. 62 at 8; ECF No. 62-1 ¶¶ 30, 31.

### 6. Other Deficiencies

In its prior order, the Court identified several other deficiencies which weighed against preliminary approval. First, Plaintiffs' prior motion failed to acknowledge the "differences between the settlement class and the class proposed in the operative complaint" and provide "an explanation as to why the differences are appropriate in the instant case." ECF No. 55 at 12; Northern District Guidance § 1(a). Second, the parties failed to provide "an estimate of the number and/or percentage of class members who are expected to submit a claim in light of experience of the selected claims administrator and/or counsel from other recent settlements of similar cases." ECF No. 55 at 13; Northern District Guidance § 1(g). Third, Plaintiffs failed to address whether Class Action Fairness Act of 2005 ("CAFA") notice is required and, if so, when it will be given." ECF No. 55 at 13; Northern District Guidance § 10.

Plaintiffs' renewed motion cures these deficiencies. First, Plaintiffs provide a detailed explanation and justification for the differences between the settlement class and the class proposed in the FAC. ECF No. 62 at 10-11. Second, Plaintiffs estimate that between two and five percent of class members will submit a claim, while also noting the limitations of these estimates in the context of the unique facts of this case. ECF No. 62 at 27. Third, Plaintiffs confirm that this action is subject to CAFA notice requirements and that Defendant will provide notice by March 20, 2020. *See* ECF No. 62 at 29 ("Defendant will provide notice under CAFA within 10 days of the filing of this motion."). Thus, these deficiencies no longer pose a barrier to preliminary approval.

### CONCLUSION

Because Plaintiffs' renewed motion for preliminary approval and preliminary certification

corrects the deficiencies addressed in the Court's earlier order, the Court GRANTS the motion. The proposed settlement class is hereby preliminarily certified for the purposes of settlement. The Court grants preliminary approval of the settlement and approves of the proposed notice procedure and form. The Court will hold a final approval hearing on November 4, 2020.

The following dates shall govern for purposes of this Settlement.

| Date | Event |
| --- | --- |
| May 26, 2020 | Last day for Defendant to produce the Class List to the Settlement Administrator |
| June 19, 2020 | Last day for the Settlement Administrator to effectuate the proposed notice plan |
| July 14, 2020 | Last day for Plaintiffs to file the Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards |
| August 18, 2020 | Last day for Class Members to submit Requests for Exclusion or objections to the Settlement |
| September 17, 2020 | Last day for Class Members to submit claims for reimbursement and to register their Eligible Devices for free map updates |
| September 30, 2020 | Last day for Plaintiffs to file the Motion for Final Approval of Class Action Settlement |
| November 4, 2020 at 2:00 p.m. | Hearing on Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards |

**IT IS SO ORDERED.**

Dated: April 29, 2020



JON S. TIGAR
United States District Judge