Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiffs Michael Livingston
and Sharon McGill

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIVINGSTON and SHARON MCGILL, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MITAC DIGITAL CORPORATION, a California corporation,<br><br>Defendant. | Case No.: 4:18-cv-05993-JST<br><br>Hon. Jon S. Tigar<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      November 4, 2020<br>Time:      2:00 p.m.<br>Place:      Courtroom 6 |

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on November 4, 2020, at 2:00 p.m., in Courtroom 6 of the above-

3    captioned Court, located at 1301 Clay Street, Oakland, California 94612, the Honorable Jon S. Tigar

4    presiding, Plaintiffs Michael Livingston and Sharon McGill will, and hereby do, move this Court to:  (1)

5    enter an order finally approving the settlement described in the Settlement Agreement (Dkt. No. 62-1)

6    preliminarily approved by the Court on April 29, 2020; (2) finally certify the Settlement Class; (3) enter a

7    judgment to dismiss the action.

8        This Motion is based on:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points

9    and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of

10   Raul Perez; (4) the Declaration of Melinda Yang Regarding the Class Notice and Claims Administration;

11   (5) the [Proposed] Order and [Proposed] Judgment filed concurrently herewith; (6) the records, pleadings,

12   and papers filed in this action; and (7) on such other documentary and oral evidence or argument as may be

13   presented to the Court at the hearing of this Motion.

14

15   Dated:  September 30, 2020                    Respectfully submitted,

16                                      By:   /s/ Trisha K. Monesi
                                         Raul Perez
17                                       Tarek H. Zohdy
                                         Cody R. Padgett
18                                       Trisha K. Monesi
                                         **CAPSTONE LAW APC**
19
                                         Attorney for Plaintiffs Michael Livingston
20                                       and Sharon McGill

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. FACTS AND PROCEDURE ......................................................................................1

    A. Overview of the Litigation ..............................................................................1

    B. The Parties Conducted a Thorough Investigation of the Factual and Legal

        Issues ..............................................................................................................2

    C. The Parties Settled at a Mediation Before a Retired Judge ............................3

    D. The Settlement Class and the Principal Terms of the Settlement ..................3

        1. Composition of the Settlement Class ..................................................3

        2. Settlement Consideration ....................................................................4

        3. Release by Plaintiffs and the Settlement Class...................................4

    E. The Notice and Claims Administration Processes Were Completed

        Pursuant to the Court's Order ........................................................................5

III. ARGUMENT ...............................................................................................................6

    A. Class Certification Requirements Are Met.....................................................6

    B. The Court Should Grant Final Approval of the Class Settlement...................6

        1. Class Representatives and Plaintiffs' Counsel Have Adequately

            Represented the Class and the Settlement Was Negotiated at

            Arms'-Length ......................................................................................8

        2. The Settlement Provides Valuable Relief to the Class .......................8

            (a) The Relief Provided for the Class Is Fair, Adequate, and

                Reasonable Considering the Costs, Risks, and Delay of

                Trial and Appeal ......................................................................9

            (b) The Method of Distribution, Attorneys' Fees, and Other

                Agreements .............................................................................11

        3. The Settlement Treats Class Members Equitably..............................12

        4. The Extent of Discovery Completed Supports Final Approval .......12

        5.     The Views of Experienced Counsel Should Be Accorded Substantial Weight ...................................................................................13

        6.     The Reaction of Class Members to the Proposed Settlement...........................13

   C.   The Settlement Satisfies the *Bluetooth* Factors..............................................................14

IV.   CONCLUSION ....................................................................................................................15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012).........................................8

*Allen v. Bedolla,* 787 F.3d 1218 (9th Cir. 2015) ...............................................................................7

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997)......................................................................11

*Bayat v. Bank of the W.,* No. C-13-2376-EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15,
    2015).................................................................................................................................14

*Chambers v. Whirlpool Corp.,* 214 F. Supp. 3d 877 (C.D. Cal. 2016) ..........................................6, 9

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .....................................................6

*Corson v. Toyota Motor Sales U.S.A., Inc.,* No. CV 12-8499-JGB (VBKx), 2016 WL
    1375838 (C.D. Cal. Apr. 4, 2016) ........................................................................... 9, 14

*Eisen v. Porsche Cars North American, Inc.,* No. 11-09405-CAS, 2014 WL 439006 (C.D.
    Cal. Jan. 30, 2014)....................................................................................... 12, 13

*Grannan v. Alliant Law Grp., P.C.,* No. C10-02803 HRL, 2012 WL 216522 (N.D. Cal.
    Jan. 24, 2012).................................................................................................................14

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ...........................................................6, 7

*Hensley v. Eckehart,* 461 U.S. 424 (1983) .......................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ...................................14

*In re Extreme Networks, Inc. Sec. Litig.,* No. 15-04883, 2019 WL 3290770 (N.D. Cal. July
    22, 2019)............................................................................................................................7

*In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539 (9th Cir. 2019)......................................... 6, 11

*In re Linkedin User Privacy Litig.,* 309 F.R.D. 573 (N.D. Cal. 2015) ...........................................14

*In re Nexus 6P Prods. Liab. Litig.,* 293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................10

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015) .........................................8

*In re Pac. Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995) ............................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,* 895 F.3d 597
    (9th Cir. 2018)..................................................................................................................15

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ...................................................9

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ........................12

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ....................................11

*Milligan v. Toyota Motor Sales, U.S.A.*, No. 09-05418-RS, 2012 U.S. Dist. LEXIS 189782
     (N.D. Cal. Jan. 6, 2012) .........................................................................................13

*Moore v. Verizon Commc'ns Inc.*, No. 09-1823, 2013 WL 4610764 (N.D. Cal. Aug. 28,
     2013)........................................................................................................................14

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982)...................8

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...................................14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ......................................8, 9

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358 (N.D. Cal. Aug.
     29, 2014)..................................................................................................................14

*Sadowska v. Volkswagen Group of America*, No. 11-00665-BRO, 2013 WL 9500948
     (C.D. Cal. Sep. 25, 2013).........................................................................................9

*Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. Apr. 30,
     2010)........................................................................................................................14

*Spillman v. RPM Pizza, LLC*, No. CIV-A-10-349-BAJ, 2013 WL 2286076 (M.D. La. May
     23, 2013)..................................................................................................................14

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ...............................................14

*Tomek v. Apple Inc.*, 636 F. App'x 712 (9th Cir. 2016)................................................10

*Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017) .............9

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ..................................10

*Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015 WL 3622990 (E.D.
     Cal. June 9, 2015).................................................................................................9, 14


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a).......................................................................................................6, 7

Fed. R. Civ. P. 23(b)(3) ...............................................................................................6, 11

Fed. R. Civ. P. 23(e)(2)................................................................................................7

Fed. R. Civ. P. 23(e)(2)(A)..........................................................................................8

Fed. R. Civ. P. 23(e)(2)(B)..........................................................................................8

Fed. R. Civ. P. 23(e)(2)(C)..........................................................................................8

Fed. R. Civ. P. 23(e)(2)(D).........................................................................................12

Fed. R. Civ. P. 23(e)(3)..............................................................................................12

Fed. R. Civ. Pro. 23(b)(3)...........................................................................................11

**SECONDARY AUTHORITIES**

https://www.orrick.com/en/Practices/Class-Action-Defense.......................................13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 29, 2020, this Court granted preliminary approval of the Amended Joint Stipulation of Class Action Settlement and Release,[1] and approved distribution of the Notice of Class Action Settlement to all Class Members. Class Members were given 60 days to object to, or opt out of, the Settlement. Now that the 60-day deadline has passed, Plaintiffs Michael Livingston and Sharon McGill are pleased to report that no Class Members objected to the Settlement, and only four individuals opted out of the Settlement Class. (Declaration of Melinda Yang ["Yang Decl."] ¶ 27.) Plaintiffs accordingly move the Court to grant this motion for final approval of the class action settlement. This motion is unopposed by Defendant MiTAC Digital Corporation ("Defendant") (collectively with Plaintiffs, the "Parties").

If approved, the Settlement will provide Class Members with immediate and valuable relief consisting of:  (1) free map updates; (2) reimbursement for previously purchased Map Updates; and (3) notice of Magellan's terms and conditions (as explained in the FAQ), and that the terms and conditions do not apply to RoadMate Navigators with Free Lifetime Map Updates purchased before June 30, 2019. Plaintiffs and their counsel believe the Settlement is fair and reasonable, and provides Class Members similar, if not superior, remedies to what they could otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial.

By granting preliminary approval, this Court has already determined that the Settlement is fair and reasonable, subject to objections. With no objections to the Settlement, the Court's preliminary assessment has been separately endorsed by the Settlement Class. Accordingly, the Court should grant final approval.

## II.    FACTS AND PROCEDURE

### A.    Overview of the Litigation

Since at least 2010, Defendant designed, manufactured, marketed, distributed, and sold Magellan RoadMate Navigator GPS devices with "free lifetime map updates" ("Magellan RoadMate FLM" or "devices").[2]  (*See* First Amended Complaint (Dkt. 21) ("FAC") ¶ 29.) Under Defendant's original policy,

---

[1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

[2] Defendant also manufactured, marketed, distributed, and sold Magellan RoadMate Navigator

1   purchase of a device "entitles" owners to "up to four (4) map updates per year, for the life of the GPS

2   receiver or until Magellan no longer receives relevant map data." (*Id.* ¶ 32.)

3       In June 2018, Defendant changed the Terms and Conditions of its lifetime map subscriptions to

4   state, "lifetime refers to the useful lifetime of the device, considered to be 3 (three) years from the date of

5   manufacture."[3]  (FAC ¶ 4, 36.) After the self-designated 3-year "lifetime of the device" period, Plaintiffs

6   and other owners of Magellan RoadMate FLM devices were required to pay for each map update. (FAC ¶

7   5, 11, 17, 35.)

8       Plaintiffs filed this class action in the United States District Court for the Northern District of

9   California on September 28, 2018. (Dkt. 1.) The operative FAC asserts claims for:  (1) violations of

10  California's Consumers Legal Remedies Act ("CLRA"); (2) violations of Unfair Competition Law,

11  California Business & Professions Code sections 17200, *et seq*. ("UCL"); (3) breach of express warranty

12  pursuant to California Commercial Code section 2313; (4) breach of written warranty pursuant to the

13  Magnuson-Moss Warranty Act; (5) trespass to chattels; and (6) unjust enrichment. Although the operative

14  FAC alleges six causes of action, they are all predicated on these operative facts—that Defendant marketed

15  and sold the devices with "free lifetime map updates," but stopped providing free lifetime map updates

16  after only three years, when it began to charge for updates instead.

17       **B.    The Parties Conducted a Thorough Investigation of the Factual and Legal Issues**

18       The Settlement is the product of informed negotiations following extensive investigation by

19  Plaintiffs' Counsel.  Before and after filing the Complaint, Plaintiffs' Counsel investigated and researched

20  the claims of Plaintiffs and Class Members relating to the "free lifetime map updates" offered in

21  connection with Defendant's devices.  (Declaration of Raul Perez ["Perez Decl."] ¶ 4.)

22       After filing the complaint, Plaintiffs' investigation entailed an exchange of information pursuant to

23  formal and informal discovery methods, including document requests and the deposition of Defendant's

24  corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs' discovery and investigation

25  focused on identifying the universe of models of the Magellan RoadMate FLM devices and determining

26  _____

27  GPS devices without the "free lifetime map updates" feature. Consumers of such devices would have to
    pay to update the maps. Such consumers are not putative class members in this action.

28       [3] In or around August 2018 the FAQ was changed to state that "lifetime refers to the useful lifetime
    of the device, considered to be three (3) years from the date of first use."  (FAC ¶ 5.)

which of those devices were, and are still able, to download and use new map updates. (Perez Decl. ¶ 5.)

Plaintiffs also requested and received evidence concerning the:  (1) number of devices sold by Defendant in the United States during the Class Period; (2) the number of devices shipped to third-party distributors during the Class Period; (3) the number of Eligible Devices that were registered to Defendant, and Defendant's ability to identify Class Members through those registration records; and (4) all details and communications to Class Members regarding Defendant's June 2018 FAQ (the "FAQ"), which purported to limit the "useful lifetime" of the devices purchased by lifetime subscribers to 3 years. (Perez Decl. ¶ 6.)

The extensive document and information exchanges allowed Plaintiffs' Counsel to appreciate the strengths and weaknesses of the claims alleged against Defendant and the benefits of the proposed Settlement. (Perez Decl. ¶ 7.)

**C.      The Parties Settled at a Mediation Before a Retired Judge**

Prior to their mediation, the Parties engaged in several months of preliminary settlement negotiations, during which they discussed the tentative terms and the structure of proposed class action settlement. Then, on May 8, 2019, the Parties attended a day-long mediation before the Honorable Jay C. Gandhi (Ret.) at JAMS. With Judge Gandhi's assistance, the Parties were able to negotiate a complete settlement of all claims at issue. (Perez Decl. ¶ 8.)

Plaintiffs filed a motion for preliminary approval of the settlement on July 12, 2019. (Dkt. 45.) The Court found the matter suitable for disposition without oral argument. (Dkt. 51.) The Court then issued an Order on December 4, 2019, outlining a number of deficiencies in the settlement and the motion for preliminary approval. (Dkt. 55.) In response to the Order, the Parties amended the settlement to address the Court's concerns. The Court preliminarily approved the amended settlement on April 29, 2020.

**D.      The Settlement Class and the Principal Terms of the Settlement**

**1.      Composition of the Settlement Class**

The Settlement defines the Settlement Class as "all persons who purchased an Eligible Device in the United States of America at any time within the Class Period."  (Settlement Agreement ¶ 4.) An "Eligible Device" is defined as "a Magellan RoadMate Navigator device purchased with Free Lifetime Map Updates purchased within the Class Period." (*Id.* ¶ 11.) The Class Period is defined as September 28, 2014 to June 30, 2019. (*Id.* ¶ 6.) The Settlement Class only releases claims accruing through June 30,

2019.[4] (Settlement Agreement ¶ 19.)

The Settlement Class includes those individuals who purchased a device in the U.S., as opposed to all individuals in the U.S. who purchased a device. The location of the purchase rather than the location of the customer is key in identifying the maximum number of potential class members, i.e. those who purchased a device in the United States and were exposed to the alleged advertising as described in Plaintiffs' operative complaint.

## 2.    Settlement Consideration

Plaintiffs and Defendant have agreed that Class Members will receive three principal kinds of consideration:  (1) free map updates; (2) reimbursement for previously purchased Map Updates; and (3) notice of Magellan's terms and conditions (as explained in the FAQ), and that the terms and conditions do not apply to RoadMate Navigators with Free Lifetime Map Updates purchased before June 30, 2019. Class Members who paid out-of-pocket for map updates are also eligible for cash reimbursements. (Settlement Agreement ¶ 29.)

## 3.    Release by Plaintiffs and the Settlement Class

In exchange for the settlement consideration, Class Members who do not opt out will agree to release all claims arising out of the FAC during the Class Period. The Settlement Agreement defines "Released Claims" as:

> [A]ll claims, rights, demands, liabilities, losses, obligations, damages, penalties, interests, actions, liens, suits, judgments, indebtedness, costs, fees, expenses, restitution, debts, controversies, causes of action and all other legal responsibilities of any form or nature whatsoever which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action or any legal theories that could have been raised based on the allegations in the Action during the Class Period.

---

[4] The significance of June 30, 2019 is as follows:  At the beginning of the Class Period, Defendant represented that Eligible Devices would be eligible for "free lifetime map updates." On June 18, 2018, however, Magellan posted an FAQ to its website which narrowly defined "lifetime map subscription" to mean only *three years* from the date of manufacture. Magellan's plan was to disseminate this narrower definition for "lifetime map subscriptions" to consumers via updates to its website and marketing materials, and packaging, and to instruct third-party resellers and distributors to similarly update their websites, marketing materials, and packaging to notify consumers of how Magellan had defined, or re-defined, the term "lifetime map subscription." Magellan estimated that the process of completely disseminating this new definition to the public via the above changes and updates would be complete as of June 30, 2019. The Parties accordingly agreed that the revised terms and conditions contained in the FAQ—i.e., limiting free map subscriptions to three years from the date of manufacture—would not apply to RoadMate Navigators with "Free Lifetime Map Updates" purchased *before* June 30, 2019.

1   (Settlement Agreement ¶ 19.)

2        **E.**     **The Notice and Claims Administration Processes Were Completed Pursuant to the**

3              **Court's Order**

4         Pursuant to the Court's Order preliminarily approving the Settlement Agreement, the Parties

5   engaged CPT Group, Inc. ("CPT") to provide settlement administration services. (Yang Decl. ¶ 2.)  CPT's

6   duties have included, *inter alia*:  (1) emailing the Notice of Class Action Settlement ("Notice") to all Class

7   Members for whom Defendant had an email address on record; (2) developing the settlement website and

8   administering the online claims submission portal (*see* https://www.magellanroadmatesettlement.com); (3)

9   publishing a summary of the Notice via the PR Newswire; (4) publishing a summary of the Notice via The

10   Mercury News; (4) publishing an audio version of a short form of the Notice via Pandora.com; (5)

11   processing Claim Forms and Requests for Exclusion; and (6) providing weekly reports to counsel for the

12   Parties. (*Id.* at ¶ 3.)

13         On April 29, 2020, CPT received the Class Notice prepared jointly by Plaintiffs' Counsel and

14   counsel for Defendant and approved by the Court. The Class Notice summarized the Settlement's principal

15   terms, and advised Class Members about how to submit claims, opt out of the Settlement Class, and object

16   to the Settlement, and the applicable deadlines for each option. (*Id.*) Separately, counsel for Defendant

17   provided CPT with the Class List.

18         On June 19, 2020, CPT commenced the notice plan as outlined in the Settlement and the Court's

19   Order Granting the Motion for Preliminary Approval of the Class Action Settlement. (*Id.* at ¶ 18.) CPT

20   disseminated long and short-form versions of the Notice by email and publication notice. Class Members

21   were given 60 days to opt out or object to the Settlement. Plaintiffs are pleased to report that only four

22   Class Members opted out of the Settlement Class, and no Class Members have objected to the Settlement.

23   (*Id.* at ¶ 27.)

24         With respect to the claims process, and in addition to their having already received the Court-

25   approved Class Notice, Defendant also directly emailed all individuals who might be Class Members and

26   who paid for updates during the Class Period ("Reimbursement Class Members") to advise them that they

27   may be eligible for reimbursement, and to encourage them to submit a claim form to CPT. For context,

28   Defendant represented to Plaintiffs that while it can identify all individuals who might be Class Members

who paid for updates during the Class Period (approximately 528), it is not able to determine whether the updates were purchased for Eligible Devices (i.e., although the updates were purchased during the Class Period, it is possible that the updates were for other devices without the "free lifetime map updates" feature, see footnote 2, *supra*), or whether the devices where purchased within the United States during the Class Period. The Settlement accordingly required Class Members to verify via the claims process that the update was for an Eligible Device purchased in the United States during the Class Period.

To date, a total of approximately 2% of Reimbursement Class Member have submitted valid claims for reimbursement. (Yang Decl. ¶ 32.) MiTAC is in the processing of disseminating a third targeted email to Reimbursement Class Members to remind them that they can still submit claims for reimbursement.

## III.     ARGUMENT

### A.     Class Certification Requirements Are Met

The Court certified the Class for settlement purposes upon Preliminary Approval, finding that requirements under Rule 23(a) and Rule 23(b)(3) are satisfied. (*See* Dkt. No. 65.) Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the settlement class.

### B.     The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through

1  arms'-length negotiations, courts are to give:

2  > [P]roper deference to the private consensual decision of the parties. . . . [T]he
   > court's intrusion upon what is otherwise a private consensual agreement
3  > negotiated between the parties to a lawsuit must be limited to the extent
   > necessary to reach a reasoned judgment that the agreement is not the product
4  > of fraud or overreaching by, or collusion between, the negotiating parties,
   > and that the settlement, taken as a whole, is fair, reasonable and adequate to
5  > all concerned.

6  *Hanlon*, 150 F.3d at 1027.

7       Guided by these policies, the district court then may consider some or all of the following factors in

8  evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense,

9  complexity, and likely duration of further litigation; (2) the risk of maintaining class action status

10  throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage

11  of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel;

12  and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

13       The recent amendments to Rule 23 direct the Court to consider a similar list of factors, including

14  whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the

15  proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into

16  account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

17  distributing relief to the class, including the method of processing class-member claims; (iii) the terms of

18  any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

19  identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

20  FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not "displace"

21  the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure

22  and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks,*

23  *Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P.

24  23(e)(2) advisory committee's note to 2018 amendment).

25       Additionally, for class action settlements prior to contested certification, the Ninth Circuit further

26  requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors.

27  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011); *Allen v. Bedolla*, 787

28  F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting

1    final approval.

2    ### 1.    Class Representatives and Plaintiffs' Counsel Have Adequately Represented

3    ### the Class and the Settlement Was Negotiated at Arms'-Length

4    Under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiffs and Plaintiffs' Counsel

5    adequately represented the class and whether the proposed settlement was negotiated at arm's length. Both

6    factors are amply satisfied. There is no suggestion of a conflict between the Class Representatives and

7    Plaintiffs' Counsel on the one hand, and Class Members on the other. *In re Online DVD-Rental Antitrust*

8    *Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (conflict cannot be "speculative" or "trivial" but must go to "the

9    heart of the litigation"). Plaintiffs and Plaintiffs' Counsel have vigorously pursued the claims on behalf of

10   the Class, adducing important facts regarding Defendant's at-issue representations concerning "free

11   lifetime updates," litigating the matter and opposing Defendant's motion to dismiss, and negotiating a

12   valuable Settlement to deliver immediate relief to the Class.

13   Rule 23(e)(2)(B) is also satisfied, as the Settlement is the product of arm's length negotiations after

14   a mediation before a distinguished mediator and jurist, the Hon. Jay C. Gandhi (Ret.) of JAMS.

15   ### 2.    The Settlement Provides Valuable Relief to the Class

16   Under Rule 23(e)(2)(C), the Court is to examine the relief to the Class in light of the costs, risks,

17   and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class,

18   including the method of processing class-member claims, the terms of any proposed award of attorney's

19   fees, including timing of payment; and any agreement required to be identified. This overlaps with first

20   three *Hanlon* factors, the strength of the plaintiff's case balanced against the risk, expense, complexity and

21   likely duration of further litigation, the risk of maintaining class certification through trial, and the amount

22   of settlement. In evaluating these considerations, a court assesses "objectively the strengths and weaknesses

23   inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a

24   settlement]." *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). However, there

25   is "no single formula" to be applied. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009).

26   In assessing the settlement's value, courts are instructed to take into account that "the very essence

27   of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for*

28   *Justice v. Civil Service Comm'n,* 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). But this Court

"put[s] a good deal of stock in the product of an arms-length, non-collusive negotiated resolution, and ha[s] **never prescribed a particular formula** by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (internal citations omitted; emphasis added). The Court "need not include a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012). Indeed, *Lane* expressly rejected any requirement that district courts calculate the value of the claims—explaining that "not only would such a requirement be onerous, it would often be impossible... [since] the amount of damages of a given plaintiff (or class of plaintiffs) has suffered in a question of fact that must be proved at trial." *Id.* [5]

(a)  **The Relief Provided for the Class Is Fair, Adequate, and Reasonable Considering the Costs, Risks, and Delay of Trial and Appeal**

As discussed above, the Settlement is fair and reasonable in light of the risks of continued litigation and the strengths of Defendant's defenses to the merits of the claims. The Court will recall that Defendant moved to dismiss Plaintiffs' claims (as alleged in the First Amended Complaint) on January 7, 2019, and at the April 24, 2019 case management conference, the Court indicated that it was inclined to dismiss Plaintiffs' federal and state warranty claims with prejudice. Defendant further argued that Plaintiffs' CLRA and UCL claims had to be dismissed because Plaintiffs failed to allege with specificity that it made any fraudulent representation or omission at the time of sale.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "[U]nder the CLRA, plaintiffs must sufficiently

---

[5] Accordingly, courts, in evaluating automotive defect settlements, do not require the plaintiff to present speculative measures of the maximum value of the action upon a successful trial. *See*, *e.g.*, *Warner v. Toyota Motor Sales U.S.A.*, No. 15-02171-FMO (C.D. Cal. May 21, 2017), Dkt. No. 140, at *13 (granting final approval without a maximum valuation, noting that settlements involve "abandoning of highest hopes"); *Corson v. Toyota Motor Sales U.S.A.*, No. 12-8499-JGB, 2016 WL 1375838, *7 (C.D. Cal. Apr. 4, 2016) (granting final approval, based in part, on "substantial recovery" that class members would receive as a result of the settlement); *See also Chambers*, 214 F. Supp. 3d at 888-89 (no valuation required to approve consumer class action settlement); *Zakskorn v. Am. Honda Motor Co.*, No. 11-02610-KJM, 2015 WL 3622990, at *8 (E.D. Cal. June 9, 2015) (same); (finding that settlement provides adequate compensation without requiring extensive valuation); *Sadowska v. Volkswagen Group of America*, No. 11-00665-BRO, 2013 WL 9500948, *4 (C.D. Cal. Sep. 25, 2013) (same).

1    allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v.*

2    *Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). The UCL prohibits any "unlawful, unfair or

3    fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. UCL claims deriving from CLRA

4    violations also depend upon the defendant's knowledge at the time of sale. *Wilson*, 668 F.3d at 1145-46 &

5    n.5.

6           Defendant claimed that Plaintiffs' allegation that it "knew the Magellan RoadMate FLM

7    navigation devices did not possess the characteristics and benefits as represented and were not of the

8    particular standard, quality or grade as represented" was not sufficiently specific to plead Defendant's

9    knowledge at the time Plaintiffs purchased their RoadMate devices. *See Wilson*, 668 F.3d at 1146-47

10   (finding that plaintiffs' "generalized assertion" of defendant's knowledge of an alleged defect was "merely

11   conclusory"); *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (finding that plaintiff "has not

12   alleged specific facts that 'allow[] the court to draw the reasonable inference' that Apple knew it was

13   issuing misleading advertisements at the time Tomek purchased his laptop"). Defendant also argued that

14   Plaintiffs' allegations of consumer complaints were not sufficient to show its "awareness of its unlawful

15   conduct." Complaint ¶ 35*; see also In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 909 (N.D. Cal.

16   2018) ("[A] handful of complaints do not, by themselves, plausibly show that Huawei or Google had

17   knowledge of the defects and concealed the defects from customers.").

18          Defendant further challenged the sufficiency of Plaintiffs' CLRA letter, as it claimed that Plaintiffs

19   had not provided specific notice that the alleged CLRA violations extended to any other particular

20   RoadMate models. Specifically, Defendant claimed that the CLRA notice identified only one RoadMate

21   5230-LM product, rather than CLRA Notice makes no reference to the twenty other RoadMate products

22   that Plaintiffs purport to include in their class claims. See Complaint ¶ 1, n.1.

23           Finally, Defendant argued that under Ninth Circuit law, consumer protection claims must be

24   governed by the law of the jurisdiction in which each purchase occurred. On this basis, Defendant argued

25   that Plaintiffs could not assert California claims on behalf of putative class members who purchased

26   RoadMate devices outside California.

27          In addition to its defenses to the merits of Plaintiffs' claims, Defendant thus also argued that

28   Plaintiffs' claims were not appropriate for class certification, particularly under *Mazza v. Am. Honda Motor*

*Co.*, 666 F.3d 581, 590 (9th Cir. 2012).[6] Specifically, for proposed nationwide litigation classes seeking certification under Rule 23(b)(3) and alleging state law violations, the district court must consider whether variations in state law swamp any common issues and defeat predominance, which is fatal to class certification. *Mazza* considered Honda's challenge to a district court's decision to certify a nationwide class of consumers claiming that Honda had misrepresented material information about Acura RLs. Honda contended that the district court erred in certifying the class under Rule 23(b)(3) because California's consumer protection statutes could not be applied to a nationwide class with members in 44 jurisdictions, and therefore plaintiffs had not demonstrated that the questions of law or fact common to class members predominated over any questions affecting only individual members. The Ninth Circuit agreed, holding that under California's governmental interest test, class members' consumer protection claims had to be governed by the laws of the jurisdictions in which the transactions took place. If the Court had applied *Mazza* to the facts of this case, Plaintiffs would have encountered considerable difficulty certifying their claims under the CLRA and UCL.

In light of the above defenses and risks of continued, Plaintiffs determined that the relief provided by the Settlement is fair, adequate, and reasonable.

### (b) The Method of Distribution, Attorneys' Fees, and Other Agreements

Under Rule 23(e)(2)(C)(ii)-(iv), the Court is to review the method of distribution, attorneys' fees and the existence of other agreements. Here, the Parties negotiated the requested awards of attorneys' fees, litigation costs, and incentive awards after they negotiated the terms of the class relief and remedies. Pursuant to those discussions, and with the assistance and recommendation of Judge Ghandi, it was agreed that Plaintiffs would seek no more than $320,000 in attorneys' fees and costs, and no more than $2,500,

---

[6] *Mazza* involved a litigation class, where the application of the laws of dozens of jurisdictions presented significant trial manageability issues, militating against a predominance finding. But under longstanding authority, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997), settlement classes can be certified without regard to manageability problems—none exist because the case has settled. And per the Ninth Circuit's decision in *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc), the onus is on the "foreign law proponent" to show that California law materially differs from, and conflicts with, the foreign law, and that the foreign state's interests would be more impaired than California's under the governmental interest test. *Id.* at 561. Here, there is no "foreign law proponent."

1  each, for Plaintiffs' incentive awards. (Settlement Agreement ¶¶ 30, 31.)

2          No other agreements have been made in connection with this Settlement under Rule 23(e)(3).

3          ### 3.      The Settlement Treats Class Members Equitably

4          The Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably

5  relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the

6  apportionment of relief among class members takes appropriate account of differences among their claims,

7  and whether the scope of the release may affect class members in different ways that bear on the

8  apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee's Notes.

9          Here, the Settlement treats all Class Members equally. All Class Members who register are entitled

10 to free map updates and any Class Members who already paid for updates are eligible to request a refund

11 with interest. No segment of the Class is given preferential treatment. Moreover, as discussed below, the

12 incentive awards sought by Plaintiffs are modest and well within the awards presumed reasonable in this

13 district.

14         ### 4.      The Extent of Discovery Completed Supports Final Approval

15         Courts may also consider the extent of discovery and the current stage of the litigation to evaluate

16 whether parties have sufficient information to make an informed decision to settle the action. *See Linney v.*

17 *Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). A settlement negotiated at an earlier

18 stage in the litigation will not be denied so long as sufficient investigation has been conducted. *Eisen v.*

19 *Porsche Cars N. Am.*, No. 11-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) (finding that

20 counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims"

21 despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

22         As set forth in greater detail above, based on their analysis of documents, class data, and testimony

23 from Defendant's corporate witness, Plaintiffs' Counsel were able to realistically assess the value of the

24 Settlement Class' claims and intelligently engage defense counsel in settlement discussions that culminated

25 in the proposed settlement now before the Court. (Perez Decl.¶¶ 4-6.)

26         By engaging in a thorough investigation and evaluation of the Settlement Class' claims, Plaintiffs'

27 Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

28 Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all

known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendant. (Perez Decl. ¶ 7.)

### 5.    The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough review of relevant documents and testimony, as well as a rigorous analysis of the Parties' claims and defenses. The expectations of all Parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations and finalized with the assistance of an experienced mediator. The Parties were also represented by experienced class action counsel throughout the negotiations resulting in this settlement. Plaintiffs' Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling consumer class actions. (*See* Perez Decl. ¶¶ 10-14, Ex. 1.) Defendant has been, and at the mediation was, represented by Orrick, Herrington & Sutcliffe LLP, an international law firm with a robust class action defense practice.[7]

### 6.    The Reaction of Class Members to the Proposed Settlement[8]

As discussed above, only four individuals opted out of the Settlement Class, and not a single Class Member objected to the Settlement. (Yang Decl. ¶ 27.) This small percentage of exclusions and the complete absence of objection demonstrates that Class Members have reacted favorably to the Settlement, supporting final approval. *See, e.g., Eisen,* 2014 WL 439006, at *5 ("Although 235,152 class notices were sent, 243 class members have asked to be excluded ...."); *Milligan v. Toyota Motor Sales, U.S.A*., No. 09-05418-RS, 2012 U.S. Dist. LEXIS 189782, at *25 (N.D. Cal. Jan. 6, 2012) (finding favorable reaction where 364 individuals opted out [0.06%] following a mailing of 613,960 notices).

The reimbursement claims rate of 2.1% is congruent with claims rates observed in consumer class action settlements approved by federal courts. *See Bayat v. Bank of the W*., No. C-13-2376-EMC, 2015

---

[7] *See* https://www.orrick.com/en/Practices/Class-Action-Defense.
[8] There is no governmental participant in this case, and so this factor is neutral.

WL 1744342, at *1 (N.D. Cal. Apr. 15, 2015) (approving settlement with a "claims rate for the monetary

relief portion of the settlement of roughly 1.9%"); *Spillman v. RPM Pizza, LLC*, No. CIV-A-10-349-BAJ,

2013 WL 2286076, at *2 (M.D. La. May 23, 2013) (noting that "less than one percent of the total class"

filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377–78 (S.D. Fla. 2007) (noting that about

1.1%, i.e. 118,663 of about 10.3 million Class Members, filed claims); *Rose v. Bank of Am. Corp.*, No.

5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (noting that about 3%, i.e.

227,701 of about 7 million Class Members, filed claims); *Grannan v. Alliant Law Grp., P.C.*, No. C10-

02803 HRL, 2012 WL 216522, at *7 (N.D. Cal. Jan. 24, 2012) (noting that about 1.4%, i.e. 1,986 of about

137,891 Class Members, filed claims); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 582 (N.D. Cal.

2015) (noting that about 5.9%, i.e. 47,336 of about 800,000 Class Members, filed claims); *Moore v.

Verizon Commc'ns Inc.*, No. 09-1823, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (noting that

about 3%, i.e. 250,236 of about 8.1 million Class Members, filed claims); *Sullivan v. DB Invs., Inc.*, 667

F.3d 273, 329, fn. 60 (3d Cir. 2011) (claims rates in consumer class settlements "rarely" exceed 7 percent).

The response is also in line with other consumer settlements that provided for reimbursement. *See

Zakskorn v. Am. Honda Motor Co.*, No. 2:11-CV-02610-KJM, 2015 WL 3622990, at *2 (E.D. Cal. June 9,

2015) (providing reimbursement for car parts; 14,095 out of 1,688,899 class members submitted claims for

reimbursement); *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 WL

1375838, at *2 (C.D. Cal. Apr. 4, 2016) (providing reimbursement for out-of-pocket expenses for re-tuned

electronic control units; 1,301 out of 1,257,225 class members submitted claims for reimbursement);

*Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956, at *1 (N.D. Cal. Apr. 30, 2010)

(reimbursement for costs to upgrade computers; 538 out of 25,350 class members submitted claims).

      Additionally, as noted above, as a supplement to the class notice plan approved by the Court,

Defendant directly emailed all consumers who might be eligible for reimbursement to encourage them to

submit claims.

### C.    The Settlement Satisfies the *Bluetooth* Factors

      Finally, pre-certification settlements require further inquiry for "more subtle signs" of potential

collusion between class counsel and defendant. *In re Bluetooth*, 654 F.3d at 946-47. But in applying "all of

these factors, considerations, 'subtle signs,' and red flags, the underlying question remains this: Is the

settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). These factors "in the end are just guideposts." *Id.*

None of the *Bluetooth* factors are present with the Parties' Settlement. The Settlement does not include any clear-sailing provision. Plaintiffs' Counsel do not seek a disproportionate share of fees. There is no "reverter" of unclaimed funds to Defendant as the Settlement does not provide for the establishment of a common fund. Further, the settlement was negotiated at arm's-length before a distinguished mediator and former jurist. And by agreeing to resolve attorneys' fees amicably, Defendant's counsel averted the possibility that Plaintiffs' Counsel might apply for, and receive, a much larger award, and thus avoided a "second major litigation" on attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.")

Quite simply, no badges of collusion exist. The Court, after applying the *Bluetooth* factors, should find that the Settlement is not the product of collusion and is fair, reasonable and adequate, meriting final approval.

## IV.     CONCLUSION

Based on the foregoing, the proposed Settlement is fair, adequate, and reasonable, and satisfies the standard for final approval. Accordingly, Plaintiffs move the Court to enter the Final Order and Judgment granting final approval of the Settlement Agreement and grant such other and additional relief as the Court may deem appropriate.


Dated:  September 30, 2020                    Respectfully submitted,

                                                             By:    /s/ Trisha K. Monesi
                                                                     Raul Perez
                                                                     Tarek H. Zohdy
                                                                     Cody R. Padgett
                                                                     Trisha K. Monesi
                                                                     **CAPSTONE LAW APC**

                                                                     Attorney for Plaintiffs Michael Livingston
                                                                     and Sharon McGill