UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIVINGSTON, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MITAC DIGITAL CORPORATION,<br><br>　　　　Defendant. | Case No. 18-cv-05993-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEY'S FEES, SERVICE AWARD, AND COSTS**<br><br>Re: ECF Nos. 68, 70 |

Before the Court is Plaintiffs' unopposed motion for final approval of class action settlement, ECF No. 70, and unopposed motion for a service award, attorney's fees, and costs, ECF No. 68. The Court previously granted a motion for preliminary approval of the settlement. ECF No. 65. No class member has objected to the settlement, and four class members have requested exclusion from the settlement class. ECF No. 70 at 8. The Court held a final fairness hearing on November 4, 2020 and will now grant the motions.

I.    **BACKGROUND**

　　A.    **The Parties and Claims**

This class action settlement arises out of Defendant MiTAC Digital Corporation's marketing and sale of navigator GPS devices. ECF No. 21 ¶ 2-7. Plaintiffs' complaint alleges that, through its marketing materials, Defendant represented that Magellan RoadMate Navigator GPS devices were eligible for "free lifetime map updates." *Id.* ¶ 2. However, Defendant provided free updates for only the first three years after purchase, and consumers were required to pay for any additional updates. *Id.* ¶¶ 4, 8, 11, 37. Defendant's marketing materials, owner's manuals, and product packaging allegedly included no indication that "lifetime" meant three years. *Id.* ¶ 2. In June 2018, Defendant allegedly added a link to its website which routed to the following

1  disclaimer: "lifetime refers to the useful lifetime of the device considered to be 3 (three) years
2  from the date of manufacture." *Id.* ¶ 4.

3  Plaintiffs' operative first amended complaint ("FAC") asserts six claims. *Id.* ¶¶ 50-111.
4  Plaintiffs allege that Defendant's concealment and failure to disclose the true nature of the "free
5  lifetime map updates" policy violates (1) the California Consumer Legal Remedies Act
6  ("CLRA"), Cal. Civ Code § 1750, *et seq.*, and (2) California's Unfair Competition Law, Cal. Bus.
7  & Prof. Code § 17200, *et seq*. ECF No. 21 ¶¶ 50-78. Plaintiffs further allege that Defendant's
8  alterations of its "Terms and Conditions" in August 2018 and its attendant refusal to honor its
9  lifetime map update warranty constitute (3) breach of express warranty under California
10 Commercial Code § 2313 and (4) breach of written warranty under the Magnuson-Moss Warranty
11 Act, 15 U.S.C. § 2303, *et seq*. *Id.* ¶¶ 79-99. Finally, Plaintiffs assert claims for (5) trespass to
12 chattels and (6) unjust enrichment. *Id.* ¶¶ 100-11.

13 **B.  Procedural History**

14 On September 28, 2018, Plaintiffs filed this class action in the United States District Court
15 for the Northern District of California. ECF No. 1. Defendant filed a motion to dismiss Plaintiffs'
16 complaint on November 26, 2018. ECF No. 17. Pursuant to a stipulation, ECF Nos. 19, 20,
17 Plaintiffs filed the FAC on December 17, 2018, ECF No. 21. Defendant moved to dismiss the
18 FAC. ECF No. 23.

19 While the Court's request for supplemental briefing on that motion was pending, the
20 parties attended an all-day mediation before Hon. Jay C. Gandhi (Ret.) on May 8, 2019 and
21 thereafter notified the Court that they had "reached an amicable resolution." ECF No. 41 at 2. On
22 July 12, 2019, Plaintiffs filed an unopposed motion for preliminary approval of class action
23 settlement, ECF No. 45, which the Court denied without prejudice because, *inter alia*, Plaintiffs
24 failed to provide sufficient information to evaluate the reasonableness of the class's recovery; the
25 notice plan contained several defects, including providing an insufficient window for class
26 members to submit objections or requests for exclusion and making extraneous requests for
27 information from potential class members and would-be objectors; and the proposed settlement
28 contained a "clear sailing provision."

2

1   On March 10, 2020, after negotiating a new agreement, Plaintiffs filed an unopposed
2   renewed motion for preliminary settlement approval.  ECF No. 62.  The Court granted preliminary
3   approval, finding that the amended settlement agreement cured the defects previously identified by
4   the Court.  ECF No. 65.  On July 14, 2020, Plaintiffs filed the present unopposed motion for
5   attorney's fees, costs, and service awards, ECF No. 68, and on September 30, 2020, Plaintiffs filed
6   the unopposed motion for final approval of class action settlement, ECF No. 70.  The Court issued
7   an order on November 2, 2020, identifying several potential concerns with the proposed
8   settlement.  ECF No. 76.  Plaintiffs filed a supplemental brief responding to those concerns on
9   November 13, 2020.  ECF No. 80. The Court now considers both motions.

### C. Terms of the Settlement

The proposed settlement agreement ("Settlement") resolves claims between Defendant and the settlement class, which encompasses "all persons who purchased an Eligible Device in the United States of America at any time within the Class Period." ECF No. 62-1 at 10.  "Eligible Device" is defined as "a Magellan RoadMate Navigator device with Free Lifetime Map updates purchased within the Class Period." *Id.*  "Class Period" is defined as "the period from September 28, 2014, to June 30, 2019." *Id.*

Under the Settlement, Defendant agrees to "reimburse each Class Member for verified out-of-pocket costs that they incurred to update their Eligible Devices, plus simple interest at a rate of seven percent per annum." *Id.* at 14.  To receive these cash reimbursements, class members must have completed a reimbursement form and submitted it to the Settlement Administrator within 90 days after the Notice Date, *id.*, where "Notice Date" is defined as "the latest date on which the Settlement Administrator emails or mails the Class Notice," *id.* at 12.  The Settlement also provides that all class members will be eligible to receive free map updates "for as long as they use their Eligible Devices." *Id.* at 14.  To receive free updates, class members must register their device(s) with Defendant within 90 days after the Notice Date. *Id.*  Class members will then be able to receive free updates for their registered devices for three years. *Id.*  At the end of this three-year period, class members will "have the opportunity to renew their three-year registration at no charge" and may continue to renew their three-year registrations for as long as they use their

3

Eligible Devices. *Id.*

In exchange, class members agree to release the following claims against Defendant:

> all claims, rights, demands, liabilities, losses, obligations, damages, penalties, interests, actions, liens, suits, judgments, indebtedness, costs, fees, expenses, restitutions, debts, controversies, causes of action, and all other legal responsibilities of any form or nature whatsoever which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action or any legal theories that could have been raised based on the allegations in the Action during the Class Period.

*Id.* at 11. In agreeing to this release, Plaintiffs acknowledge "that they are aware that they or other attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist" and assert that they "fully, finally, and forever settle and release" all claims "known or unknown, suspected or unsuspected." *Id.* at 16.

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In performing this task, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[1]

---

[1] These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended "to displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-

4

1    Settlements that occur before formal class certification also "require a higher standard of
2    fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such
3    settlements, in addition to considering the above factors, the court also must ensure that "the
4    settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*
5    *Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotation marks, citation, and
6    alteration omitted). Signs of potential collusion include: (1) a disproportionate distribution of the
7    settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement
8    for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at
9    947. If "multiple indicia of possible implicit collusion" are present, a district court has a "special
10   'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high.'"
11   *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

**B.     CAFA Compliance**

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that, within ten days of the filing of a proposed settlement, each defendant serve a notice containing certain required information upon the appropriate State and Federal officials. 28 U.S.C § 1715(b). The parties complied with this requirement on March 18, 2020, eight days after the motion for preliminary approval was filed. *See* ECF No. 70-1 at 3.

CAFA also prohibits a court from granting final approval until ninety days have elapsed since notice was served under § 1715(b). 28 U.S.C. § 1715(d). This requirement has also been satisfied.

**C.     Discussion**

For the reasons set forth below, the Court will grant final approval of the Settlement.

**1.     Adequacy of Notice**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The parties must

---

CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

5

provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court approved the parties' proposed notice procedures when it granted preliminary approval. ECF No. 65 at 12. The approved notice plan tasked CPT Group, the settlement administrator, with emailing the class notice to potential class members; mailing the class notice if a valid postal address was available and an email returned undeliverable; designing and executing a multi-media advertisement campaign; establishing a settlement website, email, and phone number; managing outside communications about the settlement; and processing claim forms from potential class members. ECF No. 70-1 at 2-3.

CPT identified 335,820 potential class members. *Id.* at 4. Defendant separately identified 544 potential class members who may be entitled to reimbursements for their purchases of map updates during the class period.[2] *Id.* at 4. CPT disseminated the class notice via numerous avenues, including email and mail; social media, newspaper, and website advertisements; a nationwide press release; dedicated settlement website, email address, and toll-free hotline; and email and mailed notices to potential class members. *Id.* at 4-8. CPT sent the notice to valid email addresses of 315,335 class members. *Id.* at 4. CPT declares that it mailed the class notice to 25,335 potential class members for whom the email was returned undeliverable and a valid postal address could "be determined after a reasonable effort . . . ." *Id.* at 8. As of September 30, 2020, CPT reports, that "400 Summary Notices [were] returned as undeliverable." *Id.* CPT utilized a skip trace search with the United States Postal Service to attempt to locate a current mailing

---

[2] Defendant emailed these potential class members directly to inform them that they may be eligible for reimbursement and to encourage them to submit a claim form to CPT group. ECF No. 70-1 at 4. Plaintiffs note that Defendant represented to Plaintiffs that although it could identify all potential class members "who paid for updates during the Class Period (approximately 528)," it could not determine "whether the updates were purchased for Eligible Devices" nor "whether the devices were purchased within the United States during the Class Period." ECF No. 70 at 12-13. Accordingly, the Settlement required class members to verify in the claims process "that the update was for an Eligible Device purchased in the United States during the Class Period." *Id.*

address for these potential class members, but the search was unsuccessful. *Id.*

The notice gave class members 60 days to opt out of or object to the settlement, and that period closed on August 18, 2020. *Id.* at 13. Class members eligible for reimbursement were required to complete a reimbursement form by September 17, 2020. *Id.* Class members desiring to take advantage of the free maps upgrade were required to register online or by mail by September 17, 2020. *Id.* at 12. As of September 30, 2020, Plaintiffs report four class member opt-outs and no objections. ECF No. 70 at 12. As of October 21, 2020, Plaintiffs report that "a total of approximately 7% of Reimbursement Class Members have submitted valid claims for reimbursement." ECF No. 72 at 2. Finally, at the hearing, the parties reported that 928 of the approximately 355,000 class members – about 0.26% – have registered for free map upgrades.

The Court finds the parties have provided adequate notice to class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding a class notice adequate where the approved notice was sent in accordance with the approve notice plan, which was "consistent with the requirements of Rule 23 and due process").

### 2. Fairness, Adequacy, and Reasonableness

#### a. Adequate Representation of the Class

The Ninth Circuit has explained that "adequacy of representation . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462 (citation omitted).

In its prior order, the Court found no evidence of a conflict between either class representatives or class counsel and the rest of the class. ECF No. 65 at 7. No contrary evidence has emerged, and no issues have been raised by class members. Similarly, the Court found that Class Counsel are experienced in class action litigation and have vigorously prosecuted this action on behalf of the class. *Id.* The Court finds that Class Counsel have continued to diligently represent the class's interest. Accordingly, this factor supports approval.

#### b. Strength of Plaintiffs' Case and Risks of Litigation

Approval of a class settlement is appropriate particularly when "there are significant

barriers plaintiffs must overcome in making their case." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. West Publ'ng Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, Plaintiffs identified several barriers that would present difficulties if litigation were to proceed. For example, Plaintiffs acknowledge the difficulty of offering sufficient evidence to establish Defendant's knowledge of the alleged defect in the navigation device or Defendant's awareness of its unlawful conduct. ECF No. 70 at 16. Plaintiffs also point out challenges to their CLRA case, including the scope of Defendant's products covered by Plaintiffs' CLRA notification letter. *Id.* at 17. Finally, Defendant has also argued that "Plaintiffs could not assert California claims on behalf of putative class members who purchased RoadMate devices outside of California," presenting possible jurisdictional problems for Plaintiffs's case. *Id.*

Because of the potential difficulties Plaintiffs face in litigating this case, the Court finds that this factor weighs in favor of approval.

### c. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Plaintiffs do not provide details regarding the proposed method of distributing relief to the class. To ensure that the funds have been distributed, the Court will hold back a portion of the attorney's fees until distribution has occurred and class counsel have submitted a notice of completion of duties.

The Court must also evaluate in detail "the terms of [the] proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed below in evaluation of Plaintiffs' motion for fees and costs, the requested attorney's fees are reasonable.

In addition, the Court must determine whether there are supplemental "agreement[s] identified under Rule 23(e)(3)." Fed R. Civ. P. 23(e)(C)(iv). Plaintiffs state that "[n]o other agreements have been made in connection with this Settlement under Rule 23(e)(3)," ECF No. 70 at 19, and the Court has found no other agreements identified under Rule 23(e)(3). These factors

8

weigh in favor of approval.

### d. Equitable Treatment of Class Members

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(C)(i), the Court considers whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, the Settlement treats all class members equally. ECF No. 70 at 19. The Court identifies no group of class members given preferential treatment. The Settlement provides free map updates for all class members who registered by the deadline, and reimbursements with interest for class members who paid for map updates within the class period and who submit claim forms within 90 days of receiving the notice. ECF No. 62-1 at 14. Furthermore, as the Court discusses below, the modest service awards for the two named Plaintiffs are reasonable and do not constitute preferential treatment. Accordingly, the Court finds that the Settlement treats class members equitably and that this factor supports approval. *See Hefler*, 2018 WL 6619983, at *8; *see also In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. Jul. 22, 2019).

### e. Range of Recovery

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice*, 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Defendant has agreed to provide (1) free map updates, (2) reimbursement for previously purchased map updates, and (3) notice to customers of Magellan's terms and conditions and notice that the terms and conditions do not apply to RoadMate navigators with Free Lifetime Map

1    Updates purchased before June 30, 2019.  ECF No. 70 at 8.  As discussed during the preliminary

2    approval phase, the Court has found that Plaintiffs have provided an adequate explanation for the

3    recovery sought here.  Class members purchased approximately 525 updates during the class

4    period at an average update price of $83.95, which totals $44,073.75 – the amount Plaintiffs would

5    have sought at trial.  ECF No. 65 at 11.  Plaintiffs also would have sought specific performance –

6    relief that class members will now receive, given that Defendant agreed to provide updates free of

7    charge to any class member who requests them.  *Id.*  Although Plaintiffs do not assign a dollar

8    amount to this package of benefits, the Court concludes that the Settlement falls within the range

9    of possible approval, given that class members who opt in will essentially be made whole.  *See id.*;

10   *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL

11   4212811, at *10 (N.D. Cal. Jul. 22, 2020) (non-monetary relief weighed in favor of approval

12   where it benefited class members).

### f.    Extent of Discovery

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *In re Mego*, 213 F.3d at 459 (internal quotation marks and citations omitted).  However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases."  *McKee Foods*, 716 F. Supp. 2d at 851-52 (internal quotation marks omitted).

Over the course of the litigation, Plaintiffs

> requested and received evidence concerning the: (1) number of devices sold by Defendant in the United States during the Class Period; (2) the number of devices shipped to third-party distributors during the Class Period; (3) the number of Eligible Devices that were registered to Defendant, and Defendant's ability to identify Class Members through those registration records; and (4) all details and communications to Class Members regarding Defendant's June 2018 FAQ . . . , which purported to limit the "useful lifetime" of the devices purchased by lifetime subscribers to 3 years.

ECF No. 70 at 10.  Plaintiffs contend that "based on their analysis of documents, class data, and testimony from Defendant's corporate witness," they were able to assess the value of their class

10

1    claims and engage in settlement discussions with Defendant that led to the Settlement before the
2    Court. *Id.* at 19. The Court is persuaded that the parties conducted sufficient discovery to make
3    an informed decision about the adequacy of the settlement. This factor supports approval.

### g. Counsel's Experience

Class Counsel have extensive experience litigating class action and consumer protection cases. That they advocate in favor of the settlement weighs in favor of approval.[3]

### h. Absence of Collusion and Arm's Length Negotiations

As discussed in its prior order, the Court found that the negotiations and the resulting agreement were not collusive because the parties eliminated the "clear sailing provision" from the Settlement. *See* ECF No. 65 at 12-13. This finding remains true. The Court also finds that the Settlement was the product of arm's length negotiations between the parties, as it was reached during a full-day mediation session supervised by Hon. Jay C. Gandhi (Ret.). *Id.* at 10. Accordingly, the Court concludes that this factor weighs in favor of approval.

### i. Reaction of the Class

Finally, the Court considers the class's reaction to the Settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal citation omitted). Here, the reaction was favorable. No class member objected to the Settlement and only four class members opted out. ECF No. 70 at 8, 20. Of the 528 class members who purchased a map update, 36 submitted valid claim forms.[4] ECF No. 77 ¶ 8. This yields a claims rate of approximately seven percent, which is within the range of approval. *See, e.g.*, *In re LinkedIn User*

---

[3] As it has stated before, the Court considers this factor but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

[4] The claims administrator received 950 reimbursement forms, which is 422 more persons than actually purchased the map updates. ECF No. 70-1 ¶ 29. Obviously, a great many of these claim forms were obviously invalid.

11

*Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (noting that a 5.9% claims rate indicated a favorable reaction to the settlement); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) (collecting cases finding response rates of 1%, 2%, 4%, 5%, and 7% to weigh in favor of – or at least not against – settlement). Of the 335,820 class members who did not purchase map updates, but who were eligible for free updates under the settlement, 928 chose to receive free updates. ECF No. 77 ¶ 6. This represents a claims rate of 0.3%. Although that rate is hardly robust, the Court concludes it is likely less a sign of dissatisfaction with the terms of the settlement – under which class members could receive everything Defendant promised them at the point of sale and be made whole – and more a sign that free map updates were not an important consideration to this segment of the class. The Court concludes that this factor weighs in favor of approval.

In sum, the Court concludes that the Settlement is fair, adequate, and reasonable, and therefore grants final approval.

## III.   ATTORNEY'S FEES AND COSTS

### A.   Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

"Courts calculate attorneys' fees using either the lodestar or percentage-of-the-fund method." *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 459 (C.D. Cal. 2014). "In a lodestar analysis, the court multiplies the number of hours reasonably expended by counsel on the matter by a reasonable hourly rate and adjusts the result upward or downward depending on a variety of factors. In a percentage-of-the-fund analysis, the court awards a percentage of the class recovery as fees." *Id.* at 459-60 (citation omitted).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

12

hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Rather, courts should seek to "do rough justice, not to achieve auditing perfection." *Id.* A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). The main inquiry in assessing attorney's fees is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

**B.     Discussion**

Here, the Court concludes that the lodestar method of awarding fees is appropriate. Class Counsel move to recover attorney's fees in the amount of $320,000, negotiated separately from the Settlement, which is said to represent "approximately 830 hours" spent "to prosecute this action and secure benefits for the Class." ECF No. 68 at 8-10. Counsel asks the Court to consider that the 830-hour estimate does not include any hours that will be spent preparing further briefing or assisting class members with claim submissions, and that counsel excluded over 115 hours from the lodestar submission.[5] *Id.* at n.2.

Counsel calculate a lodestar of $474,144 for 827.3 hours expended. ECF No. 68-1 at 3-4. Counsel's rates range from $345 to $420 for associates and $545 to $775 for partners or senior counsel. ECF No. 68 at 11. Counsel provide exemplary cases in which courts have approved comparable rates. ECF No. 68 at 15; *see, e.g.*, *Vargas v. Ford Motor Co.*, No. CV12-08388 AB (FFMx), 2020 WL 1164066 (C.D. Cal. Mar. 5, 2020) (approving counsel's rate of $245 to $445 for associates and $495 to $775 for senior counsel and partners). Further, Class Counsel contend that their rates are within the range of rates charged by other experienced attorneys who litigate

---

[5] The Court cannot consider the 115 hours that Class Counsel voluntarily eliminated absent an explanation of how the hours were expended. Nor can the Court credit unknown future hours.

13

1    and settle complex class actions. ECF No. 68 at 15; *see, e.g.*, *Parkinson v. Hyundai Motor Am.*,
2    796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Class Counsel have documented in detail the
3    number of hours each attorney spent on different tasks over the course of the litigation, *see* ECF
4    No. 68 at 11-13, and provided the Court with a sworn declaration, ECF No. 68-1, and industry
5    benchmarks, *id.* at 9, ECF No. 68 at 15, to support the reasonableness of the hours expended and
6    hourly rates charged. For purposes of the lodestar cross-check, the Court finds that these rates and
7    the hours expended are reasonable.

8    The Court notes that the parties have agreed on the amount of attorney's fees and that any
9    money not awarded in fees will revert to Defendants. As the Court has already pointed out, a
10   "clear sailing" provision – in which a defendant agrees not to object to an award of attorney's fees
11   up to a certain amount – is potentially a sign of collusion between the Defendant and Plaintiff's
12   counsel. *Livingston v. MiTAC Digital Corp.*, No. 18-CV-05993-JST, 2019 WL 8504695, at *3
13   (N.D. Cal. Dec. 4, 2019) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946-47
14   (9th Cir. 2011). A provision affirmatively providing for the award of a specific amount raises the
15   same or greater concern. "Ordinarily, 'a defendant is interested only in disposing of the total
16   claim asserted against it,' and 'the allocation between the class payment and the attorneys' fees is
17   of little or no interest to the defense.'" *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2019
18   WL 8165915, at *7 (N.D. Cal. Oct. 28, 2019) (citing *In re Bluetooth*, 654 F.3d at 949). Thus,
19   money that Defendants have agreed to pay to Plaintiff's counsel, and that they will keep if the
20   Court does not award the full amount requested, could have been allocated instead to the class.

21   However, this type of provision is not per se unreasonable, *Rollins*, 2019 WL 8165915 at
22   *8, and the Court finds no collusion on the present record. First, the settlement itself makes class
23   members whole: class members who purchased map updates get their money back, and
24   purchasers who want map updates get them at no cost. A robust settlement reduces the Court's
25   concern about the size of the fee. Second, the fee itself is not unreasonable. Plaintiffs' counsel are
26   seeking less than their actual lodestar – the proposed fee represents a negative multiplier of .67.
27   "[T]his negative multiplier suggests that the fee request is reasonable." *Schneider v. Chipotle*
28   *Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020). While either of these facts by itself

14

might not be sufficient to allay any concerns, in combination they are.

The Court therefore grants the motion for attorney's fees.

## IV. COSTS

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). To support an expense award, counsel should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

### B. Discussion

Here, Class Counsel state that they have incurred $15,163.45 in costs, including research, mediation, courier, travel, and court fees. ECF No. 68 at 19-20. Class Counsel requests the reimbursement as part of the $320,000 that they have requested in attorney's fees – in other words, they request no additional award. The Court finds the request reasonable and grants it.

## V. SERVICE AWARD

### A. Legal Standard

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez*, 563 F.3d at 958 (citation omitted). In evaluating requests for an incentive award, the court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (citations omitted). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Many courts in

the Ninth Circuit have held that a $5,000 service award is "presumptively reasonable." *See, e.g.*, *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that as a general matter, $5,000 is a reasonable amount").

### B. Discussion

Here, Plaintiffs "provided documents to, and consulted with, Counsel about the claims in this case and assisted throughout the course of the litigation." ECF No. 70 at 20. They reviewed the allegations, communicated with Class Counsel regularly during the litigation, and reviewed the Settlement to ensure its fairness. *Id.* The Court agrees that a $2,500 service award is reasonable and grants the incentive awards for Michael Livingston and Sharon McGill. *See In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1010 (approving $2,500 service awards where, "[a]mong other things, [named plaintiffs] provided information to Class Counsel, gathered documents, reviewed pleadings, stayed updated about the litigation, and reviewed and approved the proposed Settlement . . . ." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The Court grants final approval of the proposed settlement agreement.
2. The Court makes final its certification of the class for the purposes of this settlement only.
3. The Court grants Class Counsel $320,000 in attorney's fees and costs.
4. The Court grants Plaintiffs Michael Livingston and Sharon McGill service awards of $2,500 each.
5. The class members who requested to opt out of the settlement are excluded from the class.
6. The Court orders that payment of 90% of the fee be made to Class Counsel out of the Settlement Fund in accordance with the terms of the Settlement. The Court further orders that, within sixty days of settlement payments being distributed to Class Members, Class Counsel shall

16

file a Notice of Completion of Duties, describing the parties' and the Administrator's work in administering the settlement. The Notice shall include a proposed order authorizing release of the remainder of the fee.

7. The Court retains continuing jurisdiction over this settlement for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be appropriate under Court rules and applicable law.

**IT IS SO ORDERED.**

Dated: March 22, 2021

_____
JON S. TIGAR
United States District Judge